547 So.2d 54 (1989)
Gloria Chess WILLIAMS, Administratrix of the Estate of M.I. Ward, Deceased
v.
Crosie v. EVANS.
No. 58549.
Supreme Court of Mississippi.
July 12, 1989.
*55 James D. Shannon, Hazlehurst, for appellant.
John T. Armstrong, Armstrong, Hoffman & Patten, Hazlehurst, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
PRATHER, Justice, for the Court:
Crosie Evans, plaintiff below, brought this action in the Chancery Court of Copiah County, against the estate of M.I. Ward, deceased, and its administratrix, Gloria Chess Williams, (hereinafter Estate) defendant below. Evans sought repayment of a loan with interest, totalling $3,983.76, made by him to M.I. Ward prior to Ward's death. The chancellor found in Evans' favor, although he reduced the award by $1,200.00, the value of some property that Ward had deeded to the appellee. Ward's estate, through its administratrix Williams, now appeals the decision of the chancery court, citing as error the following:
(1) EVANS' CLAIM SHOULD HAVE BEEN BARRED BY §§ 15-1-29, 15-1-73 M.C.A. AND THE STATUTE OF FRAUDS, REQUIRING SUSTAINING OF APPELLANT'S MOTION TO DISMISS.
(2) THE TRIAL COURT ERRED IN ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW AS ENTERED IN ITS DECREE APPROVING THE PROBATED CLAIM IN PART ON JUNE 9, 1987.

I.
Crosie Evans and M.I. Ward, the decedent, were close friends. In late 1982, Ward was experiencing some unspecified problems with the Internal Revenue Service. (I.R.S.) As a consequence, on or about September 7, 1982, Ward asked Crosie Evans to secure a bank loan and give the proceeds to Ward to allow him to pay off this debt. Evans went to the Bank of Utica, and took out a loan with a face value of $2,800.00. Evans' sister Eva Lee Watts, who lived with Ward, acted as co-signer for the loan and pledged some security. The note, including interest, totalled $3,983.76, payable in 36 monthly installments of $110.60. Although his sister was co-signer on the note, Evans paid off the entire amount himself.
The first check from the loan proceeds was made payable to both Evans and Ward, but Ward asked Evans to get a new check issued payable only to Evans, purportedly to avoid problems with the I.R.S. This was done, and Check No. 228 was issued in the amount of $2,800.00, with Ward listed as the payee. Evans and his sister also testified at trial that Ward signed a document wherein he promised to pay off the full debt in 1986. However, this document was allegedly destroyed when Evans' house was destroyed by an arson-related fire sometime during 1984 or 1985.
On or about September 15, 1982, Ward deeded to Evans and Watts four and three acres of land, respectively. The Estate maintains that the "loan" to Ward was actually payment for this land. Evans claimed that the deeded land was a gift and that he knew nothing about the land until after Ward had died. Undisputed testimony at trial revealed that the value of the land in 1982 was $200.00-250.00 per acre, or approximately $1,400.00-1,750.00 for the entire seven-acre tract. In a hearing that was apparently held a short time before the merits of this case were addressed, the value of the land at the time was found to be $300.00 per acre by the chancery court.
After hearing the testimony by both sides on May 29, 1987, the chancery court found that Evans had a valid claim against the estate. However, the court reduced the award from $3,983.76, the value of the loan with interest, to $2,783.76. The reduction in the award reflected a $1,200.00 credit in the appellants' favor for the four acres of land that had been deeded to Evans by Ward in late 1982. Evans does not challenge *56 this reduction of the award on appeal. Following this adverse ruling by the chancellor, the Estate perfected their appeal to this Court.

II.

SHOULD THE APPELLEE'S CLAIM HAVE BEEN BARRED BY §§ 15-1-29, 15-1-73 M.C.A. AND THE STATUTE OF FRAUDS?
The appellants maintain that through a combination of §§ 15-1-29, 15-1-73 and the Statute of Frauds (codified at § 15-3-1) the appellee's claim should have been barred. This Court disagrees.
Each of these three statutes places certain limitations on the right to bring an action based in contract, both substantive and procedural. Section 15-1-29 addresses time limitations for bringing suit based on unwritten contracts and reads as follows: 15-1-29. Limitations applicable to actions on accounts and unwritten contracts.
Except as otherwise provided in the Uniform Commercial Code, actions on an open account or account stated not acknowledged in writing, signed by the debtor, and on any unwritten contract, express or implied, shall be commenced within three years next after the cause of such action accrued, and not after.
The Estate maintains that any promise to repay the loan made by Ward prior to his death was unwritten and thus is barred by the three-year statute of limitations placed on unwritten contracts. Evans contends this statute is simply not applicable to the case sub judice because the promise to repay the loan was written, but was consequently destroyed when Evans' house burned. For reasons to be discussed more fully later in this assignment of error, this Court agrees with Evans' position.
The Statute of Frauds, as codified at Miss Code Ann. § 15-3-1, requires that certain documents be in writing to be enforceable. That portion of the statute which is applicable to the case at bar reads as follows:
15-3-1. Certain contracts to be in writing.
An action shall not be brought whereby to charge a defendant or other party:
(d) upon any agreement which is not to be performed within the space of fifteen months from the making thereof; ... unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.
The loan agreement in question, whether oral or written, became effective as between the parties in September, 1982, and Ward promised to complete payment of the loan in 1986, which is clearly outside the fifteen month time limitation described in Miss. Code Ann. § 15-3-1(c). Therefore, the agreement between the parties had to be in writing to fall within the scope of the Statute of Frauds. If, as the appellant contends, the agreement to repay the loan was never reduced to writing, then the appellant's claim is a valid one.
In order to take an action founded in contract out of the operation of Miss. Code Ann. § 15-1-29, the following requirement must be met:
15-1-73. New promise to be in writing; effect of new promise by one or more joint contractors as against non-promisors.
In actions founded upon any contract, an acknowledgment or promise shall not be evidence of a new or continuing contract whereby to take any case out of the operation of the provisions of this chapter or to deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing signed by the party chargeable thereby. (Emphasis added)
As expected, the Estate maintains that such a writing never existed, meaning that Evans' claim should have been barred for failing to meet the three-year statute of limitations found in Miss. Code Ann. § 15-1-29 and for failure to comply with the Statute of Frauds. Miss. Code Ann. § 15-3-1. Evans, on the other hand, maintains *57 that he received a valid writing signed by Ward, thus meeting the requirements of Miss. Code Ann. §§ 15-1-73 and 15-3-1 and at the same time, falling outside the scope of Miss. Code Ann. § 15-1-29. Evans also asserts however, that this writing was destroyed when his house burned. The most crucial issue in this case then becomes what may Evans do, if anything, to prove the existence of this writing?
It is well-established that when a writing or memorandum is lost or destroyed, both its existence and contents may be proven by parol evidence. "If the requirements of the statute are satisfied by a signed contract or memorandum, the contract remains enforceable even though the writing is lost or destroyed. The contents of the writing can then be proved by parol testimony and the contract enforced." 2 A. Corbin, Corbin on Contracts § 529 (1950 & Supp. 1989). This principle has been stated even more succinctly by other sources. "The loss or destruction of a memorandum does not deprive it of effect under the Statute." 1 Restatement (Second) of Contracts § 137 (1981).
This Court has failed to discover any decisions by this Court which have addressed this issue directly, but there are numerous decisions from other jurisdictions which have done so.
The cases and the commentaries are, however, in substantial agreement that a party must undertake a twofold burden in order to recover on a document that he cannot produce. Such a party must demonstrate both (a) the former existence and the present unavailability of the missing document, and (b) the contents of the missing document.
Connecticut Bank and Trust Co. v. Wilcox, 201 Conn. 570, 518 A.2d 928, 930 (1986). See also, Keshishian v. Washington Square, 414 A.2d 834, 840 (D.C. 1980); Capitol Bank and Trust Co. v. Richman, 19 Mass. App. 515, 475 N.E.2d 1236, 1240 (1985); Washington v. Claassen, 218 Kan. 577, 545 P.2d 387, 390 (1976); Bradley v. Nall, 505 So.2d 1062, 1064 (Ala. 1987).
At trial, both Evans and Watts testified about the existence and contents of the destroyed memorandum, and although Evans' testimony must be considered in light of his position as a party to the lawsuit, perhaps Ms. Watts' testimony need not be scrutinized with such a suspicious eye.[1] In any event, the Estate never challenged Evans' claim that the memorandum had been destroyed when his house burned. ("present unavailability") Nor did the Estate question the contents of the document, as described by both Evans and Watts during their testimony. The focus of the Estate's defense seemed to be that the document never actually existed at all. The case essentially was a credibility issue on which issue the chancellor held in Evans' favor.
This assignment of error is denied because an issue such as this one necessarily involves a factual determination by the trial judge, and this Court does not try cases "de novo." Concluding that the chancellor was not manifestly in error in his factfinding, this Court holds that this first assignment of error should be denied.

III.

DID THE TRIAL COURT IN ITS FINDINGS OF FACT AND CONCLUSIONS OF LAW AS ENTERED IN ITS DECREE APPROVING THE PROBATED CLAIM IN PART ON JUNE 9, 1987?
Following all the testimony, the trial court issued a ruling and then issued the following decree:
1. The funds borrowed from the and paid back to Bank of Utica Branch of Merchants National Bank of Vicksburg, Mississippi, by Crosie V. Evans in the amount of $3,983.76 were loaned by said Crosie V. Evans to M.I. Ward and used by said M.I. Ward in connection with a claim being made against him by the Internal Revenue Service and were to be *58 paid back by the said decedent to Crosie V. Evans, and which amount the decedent did not pay back to Crosie V. Evans.
2. The said M.I. Ward, decedent, executed a written statement acknowledging the receipt of said funds from Crosie V. Evans, and said written agreement set forth that the funds would be paid back to said Crosie V. Evans by the decedent on or before September 7, 1986; that said written agreement to pay was destroyed by fire when the home of Crosie V. Evans was burned with all contents.
It is a well-documented fact that as an appellate court, this Court will disturb findings of fact made by a chancellor only when the Court is of the opinion that the decision made by the trial court was "clearly erroneous" and "manifestly in error." Leard v. Breland, 514 So.2d 778, 781 (Miss. 1987); Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1349 (Miss. 1987). The language of Lovett, supra, is particularly noteworthy, for it contemplates a situation such as the one present in the case sub judice, namely where the findings of fact by the trial court are so strongly challenged.
Because Lovett has so strongly challenged the factual premise upon which the final judgment against him rests, we would remind him that upon this appeal we must accept as true the evidence which supports or reasonably tends to support the findings of fact made in the Chancery Court. Likewise, we must accept all reasonable inferences which are consistent with the judgment and which may be drawn from the testimony and the exhibits... . If, when we review the evidence in this light, we find that there is substantial evidence which would support and is consistent with the findings made by the Chancery Court, those findings are thus placed beyond our authority to disturb... .
511 So.2d at 1349.
This Court is of the opinion that the chancellor cannot be said to have been manifestly in error or clearly erroneous in the findings of fact he made. Both Evans and Watts testified at length concerning the details of the loan to the decedent, and to the details of the memorandum itself. C.S. Fultz, a witness for the appellee, stated that the decedent had attempted to give his truck to Evans shortly before Ward died, but that Evans had returned the truck after various objections were raised to the transaction.
The appellants claimed that the $2,800.00 was to pay for seven acres of land Ward had deeded, prior to his death to Evans. However, only four acres of this land was actually deeded to Evans, with the other three going to Eva Watts. The price of land per acre at the time of the transaction was found to be $300.00 by the court, meaning the value of the entire seven-acre tract was no more than $2,100.00. If Evans was indeed purchasing the land from Ward, he was overcharged approximately $700.00, no small sum considering the total purchase price.
After hearing this testimony, the chancellor obviously held that the proof offered by Evans was more credible than that presented by the appellants. After reviewing the record, this Court cannot say that these findings were incorrect; it is therefore the opinion of this Court that there is no merit to this assignment of error.

IV.
For the foregoing reasons, it is the opinion of this Court that the decision of the trial court be affirmed in all respects.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
NOTES
[1] The Dead Man Statute (§ 13-1-7 of Miss. Code Ann.) has been supplanted by Rule 601 of the Mississippi Rules of Evidence. Thus, Evans' testimony at trial was properly allowed.