GRIFFIS, J.,
for the Court.
¶ 1. This appeal arises from North Mississippi Utility Company’s (“NMUC”) complaint to enjoin the City of Hernando from serving water within NMUC’s certificated area. The chancellor entered a judgment enjoining Hernando from serving water to Creekside Subdivision, ordering the City to pay NMUC any money paid for water service and connection fees paid within Creekside Subdivision, and allowing NMUC to collect any outstanding water tap fees. We reverse and remand for further proceedings.
FACTS
¶ 2. In 1966, the Town of Hernando and Bright’s Water Association, Inc. (“BWA”) provided water service to different parts of DeSoto County. BWA was a non-profit corporation that provided water to residents within a certain area of DeSoto County. Hernando provided water to residents within its corporate limits.
¶ 3. On February 1, 1966, Hernando and BWA entered the following agreement:
WHEREAS, the town has consented to the association having its service area within one mile of the town’s limits, that of Hernando, and provide water service to certain customers within this limit, and it is necessary in the event the town should annex within its corporate limits any of the area served by the association to agree on ownership of such water lines;
THEREFORE, IN CONSIDERATION of the Town of Hernando permitting the association to serve customers within one mile of its corporate limits, the association hereby agrees in the event any of the area is ever annexed to the town, on request of the town to release such annexed area from its service area, and does give and grant to the town the option of purchasing from the association all pipe lines, mains, fittings, connections, meters, and other assets of the association within the annexed area at the fair and reasonable value thereof at the time of such annexation.
¶ 4. The original agreement was not produced at trial. The city clerk’s testimony suggested that the original 1966 agreement was either lost or destroyed. The agreement was however included in the official minutes kept by Hernando. The minutes were signed by the mayor of Her-nando, and the name of Wayne Anderson, the president of BWA, was typed in the signature line.
¶ 5. On March 12, 1990, Hernando completed the annexation of a certain area of land in DeSoto County. Creekside Subdivision, the property that is the subject of this litigation, was included as part of the annexed area. The record contains a map of the area along with a metes and bounds description of the property annexed.
¶ 6. On June 10, 1991, Hernando and BWA entered into discussions about the portion of BWA’s certified area that was *654 annexed by Hernando. The negotiations were approved at the board of aldermen meeting on June 18, 1991. On June 20, 1991, Cinclair May, the Hernando city attorney, sent a letter to Wayne Anderson, the president of BWA, informing him of Hernando’s intent to proceed before the Public Service Commission to rescind the BWA’s certifícate of public convenience and necessity covering the property annexed in 1990. May also referred to the 1966 agreement and indicated that the only assets of BWA, within the property annexed in 1990, consisted of a line located along Mount Pleasant Road and a line along Holly Springs Road.
¶ 7. On September 17, 1991, Hernando accepted a bid in the amount of $26,857 for a connection line, between the existing Hernando water lines and the property annexed in 1990, by DeSoto County Water Maintenance Company.[1] On November 6, 1991, Hernando paid DeSoto County Water Maintenance Company the sum of $26,357.
¶ 8. On November 25, 1991, BWC and NMUC entered into a systems sale and transfer agreement. The agreement provided for the sale of a water system in consideration for the assumption of outstanding debt. The agreement indicated that the personal property to be sold was “[a]ll water lines, equipment and fixtures used in and necessary to the operation of the water system owned by Bright’s Water Association, Inc.” On December 2, 1991, NMUC filed a petition with the Public Service Commission seeking approval of the transfer of the water distribution system. On December 30, 1991, Wayne Anderson, as president of BWA, executed a bill of sale to NMUC, and the bill of sale conveyed “[a]ll water lines, equipment, and fixtures, used in and necessary to the operation of the water system owned by Bright’s Water Association, Inc.” On January 27, 1992, the Public Service Commission approved the sale and transfer by BWA to NMUC. The order also granted a permanent certificate of convenience and necessity to operate and maintain a water utility system to NMUC, which covered the area previously granted to BWA.
¶ 9. On January 16,1992, DeSoto County Water Maintenance Service issued an invoice to BWA. The invoice was in the amount of $10,647.60. It itemized and described costs for 2,060 feet of pipe and meter services along Byahlia Road and 2,208 feet of pipe and meter services along Holly Springs Road.
¶ 10. A similar invoice was dated January 16, 1992, but it was issued by NMUC to Hernando. This invoice was also in the amount of $10,647.60. It itemized and described costs for 2,060 feet of pipe and meter services along Byahlia Road and 2,208 feet of pipe and meter services along Holly Springs Road. The difference between the two invoices was that the NMUC invoice stated the following in the subject matter line, “Payment for water mains and meter service — annex into City Limits.”
¶ 11. On February 5, 1992, Hernando paid NMUC the amount of $10,647.60. On April 28, 1992, Bill Roberson, president of NMUC, executed a bill of sale to Hernan-do for personal property that was described in the two invoices discussed above.
¶ 12. On November 29, 1997, Hernando completed the annexation of the property of an additional tract of land, which is not the subject of this litigation but was referred to at the hearing of this case. The record contains a map of the area and a *655 metes and bounds description of the property annexed in 1997.
¶ 13. On July 13, 2001, NMUC filed its complaint to enjoin Hernando from serving water within NMUC’s certificated area. In the complaint, NMUC alleged that it was authorized by the Public Service Commission to serve water in the area annexed by Hernando in 1990 and 1997. NMUC asserted that a new development, named Creekside Subdivision, was recently approved by Hernando, and the city connected to and agreed to provide water service to Creekside Subdivision. Creekside Subdivision is within the boundaries of the land annexed in 1990. NMUC asked the chancellor for a permanent, injunction to prevent Hernando from providing water and related service “within NMUC’s certificated area ... except for those few customers presently being served by the City pursuant to an arrangement between the parties.”
¶ 14. After hearing from three witnesses and considering the evidence, the chancellor entered a brief order that contained the following findings of fact and conclusions of law:
2.This lawsuit involves an area within the City limits of Hernando, DeSoto County, Mississippi known as Creekside Subdivision which is within an area to which the Mississippi Public Service Commission has previously issued a Certificate of Public Convenience and Necessity to [NMUC] to serve water to persons residing therein. The Court finds that it is clear that the City of Her-nando has the right by statute to purchase from [NMUC] the right to serve water to customers living on real property located within an area, annexed by the City of Hernando. If an agreement cannot be reached the City of Hernando would then have the right to take the annexed area through eminent domain proceedings.
3. The Court finds that the Statute of Frauds would apply to this case since an interest in real property is involved. An agreement for the conveyance of a portion of the Certificated Area held by Plaintiff must be in writing. The only evidence of a written agreement was Exhibit 6, the 1966 option agreement between the City of Hernando and Bright’s Water Association. Exhibit 6 is only a copy and it is only signed by one party, the Defendant City, and does not comply with the Statute of Frauds. Further, Exhibit 7 is only an invoice for pipes and meters and a copy of [a] check and does not comply with the Statute of Frauds.
4. The Court finds that, as to Creek-side Subdivision, the City of Her-nando has not purchased the right to service this area and an injunction will issue.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:
A. The City of Hernando is enjoined from serving water to Creekside Subdivision effective January 6, 2002;
B. [NMUC] is entitled to any money .paid to the City of Hernando for water service only as provided to customers located within Creekside Subdivision;
C. [NMUC] is also entitled to any water tap fees paid to the City for water connection fees for Creekside Subdivision; and
D. [NMUC] is entitled to collect any water tap fees currently obligated to be paid to the City of Hernando *656 but not yet collected by the City of Hernando.
From this judgment, Hernando appeals.
STANDARD OF REVIEW
¶ 15. This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. Denson v. George, 642 So.2d 909, 913 (Miss.1994).
ANALYSIS

I. Whether the statute of frauds was applicable.

¶ 16. The chancellor’s ultimate conclusion was based on his finding that the 1966 agreement was unenforceable. The chancellor found “that the Statute of Frauds would apply to this case since an interest in real property is involved. An agreement for the conveyance of a portion of the Certificated Area held by Plaintiff must be in writing.” In his oral finding, the chancellor held the 1966 agreement:
does not comply with the Statute of Frauds in that it is only a copy and that copy is only signed by one party. We would have an entirely different case here today if we had the original of this agreement. I don’t know what happened to the original, whether it got flooded in the basement, lost or whatever, but I think you have to have the original to comply with the Statute of frauds.
¶ 17. The statute of frauds requires that certain types of contracts must be in writing to be enforceable. Williams v. Evans, 547 So.2d 54, 56 (Miss.1989). The portion of the statute of frauds, which is applicable here, reads:
An action shall not be brought whereby to charge a defendant or other party:
[[Image here]]
(c) upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year; ...
unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.
Miss.Code Ann. § 15-3-1 (Rev.2003).
¶ 18. The chancellor apparently determined that since the original 1966 agreement was not introduced in evidence then the statute of frauds caused it to be unenforceable. The chancellor stated that the 1966 agreement was an “interest in real property.” We find that the 1966 agreement was not a “contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year.” Id.
¶ 19. The statute of frauds simply does not require every contract that relates to an interest in real property be in writing. In William W. Bond, Jr. & Associates, Inc. v. Lake O’The Hills Maintenance Association, 381 So.2d 1043, 1044 (Miss.1980), the Mississippi Supreme Court held that “the statute of frauds has no application to a covenant running with the land even though the covenant imposes a burden on the land.” The 1966 agreement between Hernando and BWA was not for the sale or lease of land. At best, it may be said that the 1966 agreement imposed a burden on the land or granted some rights to supply water to the owners or occupants of the land. Nonetheless, the sale or lease of real property was not involved in the agreement. Therefore, the *657 chancellor was clearly erroneous and applied an incorrect legal standard when he declared the 1966 agreement to be unenforceable due to the statute of frauds.. For this reason, we reverse and remand this case for further consideration by the chancellor.
¶ 20. Even if the statute of frauds governed the consideration of the 1966 agreement, we must point out that the chancellor would have erred in the application of the statute of frauds. In Williams v. Evans, 547 So.2d 54, 57 (Miss.1989), the supreme court held that “when a writing or memorandum is lost or destroyed, both its existence and contents may be proven by parole evidence.” At trial, the Hernan-do City Clerk Jannett Riley testified about the existence and contents of the 1966 agreement. She stated that whenever the City entered into an agreement, the exact language of the agreement was typed into the minutes. She also stated that when an agreement was placed into the minutes, it meant that there was a signed original agreement executed by the mayor and the other parties to the document.
¶21. We find that Hernando proved the existence and contents of the 1966 agreement not only by parole evidence through the testimony of Ms. Riley, but also through the official city minutes that were kept pursuant to Mississippi Code Annotated Section 21-15-17 (Rev.2001). Therefore, we find the chancellor erred.
¶ 22. We find that the chancellor erred in finding the 1966 agreement to be unenforceable. On remand, the primary question for the chancellor to decide is whether Hernando’s payment of the BWA and NMUC invoices, during 1991 and 1992, constituted full payment for the rights to serve all of the property annexed in 1990. If Hernando paid fair value for BWA’s pipes and equipment within the area of land annexed in 1990, then the 1966 agreement should be enforced and NMUC’s claims should fail.

II. Whether the chancellor erred in not applying the statute of limitations.

¶23. Hernando also asserts that the chancellor erred in not applying the three year statute of limitations, Mississippi Code Annotated Section 15-1-49 (Rev. 2003). Hernando argued that it served the area in question, without objection from NMUC, since 1991 when NMUC acquired Bright’s Water Association. NMUC, on the other hand, argues that the statute of limitations does not bar its right to provide water and related services to the area.
¶ 24. The chancellor addressed the statute of limitations matter after issuing the injunction against Hernando. He stated that any discussion on the issue was “nonbinding dicta” and referred to the matter as one more akin to the doctrine of laches. However, the chancellor did not address the issue any further. Because we find that this issue was not properly addressed by the chancellor, we remand this issue for further consideration.
¶ 25. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ. CONCUR.

. DeSoto County Water Maintenance Company is a sister corporation of NUMC. Both corporations were then owned by Bill Roberson.