BRENT, et al. *v.* CORBIN

No. 43481          April 5, 1965          173 So. 2d 430

*Henry, Barbour & Decell,* Yazoo City, for appellants.

*J. W. Kellum,* Sumner, for appellee.

ETHRIDGE, J.

This is a suit by vendors of real property, Gordon R. Brent and Allen C. Thompson, Jr., against the vendee, Bill R. Corbin, for the recovery of earnest money under a contract of sale. The contract provided for a warranty deed with a merchantable title. The vendee stopped payment on the earnest money check because vendors did not own the minerals. The Chancery Court of Yazoo County agreed with that position, held vendors were unable to comply with the contract of sale, and dismissed their bill of complaint. We affirm that decree.

In 1962 Brent and Thompson were engaged in buying and selling farm property. In September and October 1962, by three separate deeds they purchased Beech Grove Plantation in Yazoo County, containing 1670 acres.

Although jointly owned by them, title was taken in Brent's name. The property was subject to encumbrances of approximately $179,500. Corbin was approached about purchasing it. He went over the land with Brent, and later examined it separately. Subsequently the parties agreed that Corbin would buy the property for $205,000. At that time neither vendors nor Corbin were represented by attorneys. On or about December 14, 1962, they executed in Memphis, Tennessee, a sale and purchase contract, on a form printed for a title insurance company. Corbin gave his check for $5,000 as earnest money and in part payment. The parties did not insert a legal description of the property, but referred to "1670 acres, more or less, owned by seller" in Yazoo County, Mississippi. This was all of the land owned by Brent in Yazoo County. The printed contract provided that seller agreed to convey the real estate "by good and sufficient warranty deed". Corbin agreed to assume the existing indebtednesses. Settlement and payment of the balance of the cash payment "shall be made upon presentation of a good and valid warranty deed with the usual covenants and conveying a good and merchantable title," after examination of title.

The contract stated: "It is understood and agreed that if the title is not good and cannot be made good within a reasonable time after written notice has been given that the title is defective, specifically pointing out the defects, then this earnest money which has been deposited with the undersigned agent (Thompson) shall be returned to the purchaser and the usual commission shall be paid the agent by the seller." If the title was good, and purchaser failed to pay for the property, seller had the right to cancel the contract and retain the earnest money. Also: "The purchaser accepts the said real estate in its existing condition, no warranties or representations having been made by the seller or the agent which are not herein expressly provided." And fur-

ther, "Title to be conveyed subject to all restrictions, easements and covenants of record, and subject to zoning ordinances or laws of any governmental authority."

Corbin employed an attorney to represent him and to examine the title. He found that most of the minerals were owned by persons other than the vendors. Prior to that, however, Corbin moved his equipment and took possession of the property early in January 1963, in preparation for the forthcoming crop year. Closing the sale was delayed, pending negotiations about coordinating payment dates and examination of title. After the attorney examined the title and determined that vendors did not own the minerals, he orally advised Brent that Corbin would not purchase the property for that reason. No written notice of objection to the title was given. Brent had not deposited the earnest money check, so Corbin withdrew the funds from his account, thus effectively stopping payment on it. Appellants then brought this action for recovery of the $5,000 earnest money and removal of any claims asserted by defendant to the land.

Brent knew that he owned only a portion of the minerals, but never advised Corbin of this fact, nor did he make any express exception of minerals in the sale contract. Brent and Thompson testified that they showed Corbin their three deeds, which reflected exceptions of minerals, but Corbin denied this. The chancellor found that he did not know he would not receive the minerals until his attorney told him about it; and that at no time were minerals mentioned by either party.

██ █ *First*. A contract to convey a merchantable title to land by a general warranty deed implies an obligation to convey a perfect, fee-simple title, unless restricted by other clauses. Greenwood v. Ligon, 10 S. & M. 615 (Miss. 1848); Union and Planters Bank & Trust Co. v. Corley, 161 Miss. 282, 133 So. 232 (1931); 55 Am. Jur. *Vendor and Purchaser* § 162 (1946); Annot.,

57 A. L. R. 1253, 1274 (1928). ██ █ In the instant case Brent agreed to convey the property "by good and sufficient warranty deed," which would be "a good and merchantable title." Since he did not own most of the minerals, he could not convey them. Hence he could not comply with the terms of his contract. ██ █ A defect of title sufficient to constitute unmarketability can consist of outstanding mineral rights. 6 Powell, *Real Property* § 928, at 354 (1958); 8A Thompson, *Real Property* § 4484, at 505 (Repl. 1963). ██ █ Outstanding mineral rights in land constitute an encumbrance on it entitling the purchaser to refuse the title. 92 C. J. S. *Vendor and Purchaser* § 203, at p. 59 (1955); 55 Am. Jur. *Vendor and Purchaser* § § 79, 283 (1946); Annot., 109 A. L. R. 242, 270 (1937).

██ █ Appellants argue that the contract excepted minerals not owned by the vendors. It provided that the purchaser accepted the land "in its existing condition." This pertains not to the status of the title to the minerals in place, but to the exising condition of the land and improvements on it. ██ █ The agreement also stated that title was to be conveyed "subject to all restrictions, easements and covenants of record." This was not an exception of the minerals, but a reference to restrictions upon use of the surface. See 92 C. J. S. *Vendor and Purchaser* § 204 (1955).

*Second.* Appellants further assert that Corbin could not rescind the contract, because he did not comply with the requirement that if title was not good and could not "be made good within a reasonable time after written notice has been given" of the defect, then the earnest money should be returned to the purchaser. No written notice of Brent's non-ownership of minerals was given to Brent, but Corbin's attorney orally advised him of this defect. Brent does not contend that he could have cured it. At the time Brent signed the contract he knew that he did not own most of the minerals. Corbin did

not know of this fact until after execution of the contract and the title examination.

Despite his knowledge that most of the minerals were in other parties, Brent contracted to convey a good and merchantable title by a warranty deed. A vendor in these circumstances may not complain of the purchaser's failure to notify him of objections to the title. A party to a contract who is himself in default cannot maintain a suit for its breach. Nor is it necessary to point out a defect in the title which was known to the seller at the time he executed the contract to sell. Smith v. Fort, 58 S. W. 2d 1080 (Tex. Civ. App. 1933); see Newbury v. French, 98 Va. 479, 36 S.E. 519 (1900); 92 C. J. S. *Vendor and Purchaser* § 214 (b) (1955).

This was not a contract to buy a thing in gross without reference to quantity, value, or quality of the estate to be conveyed. See Fleming v. Miller, 124 Miss. 721, 87 So. 277 (1920). Appellants do not contend that they would have been able to cure the title by purchasing the considerable amount of outstanding minerals within a reasonable time. Although this land appears to be some distance from any producing oil wells, Yazoo County for many years has had oil production. *Cf.* Van Landingham v. Jenkins, 207 Miss. 882, 43 So. 2d 578 (1949).

Affirmed.

*Kyle, P. J., and Jones, Patterson and Inzer, JJ.,* concur.