SCHEB, Chief Judge.
William H. Hill and Mary L. Hill challenge the trial court’s judgment that W. R. Bridgers and Maxine Bridgers, as sellers, were entitled to retain the earnest money the Hills had deposited under a contract to purchase residential real property. We reverse.
In September 1978 the Hills and Bridgers executed a contract prepared by Owler Realty for the purchase of residential real property owned by the Bridgers, and the Hills deposited earnest money which Owler Realty held. The contract, the basic form of which both the Florida Bar and Florida Association of Realtors have approved, provided that the Bridgers would convey a marketable title and the Hills would take title subject to “[rjestrictions and matters appearing on the- plat or otherwise common to the subdivision.... ” In November the Bridgers provided the Hills with an abstract of title which reflected a reservation in previous owners of an undivided one-half interest in the oil, gas and minerals in the property. The Hills’ counsel sent the Bridgers a letter demanding that they cure this defect in the title and stating that the failure to cure it would require refund of their earnest money deposit. The Bridgers refused, and the transaction did not close.
On December 27 Owler Realty filed a bill interpleading the Hills and the Bridgers to determine who was entitled to the earnest money deposit. The Hills cross-claimed against the Bridgers alleging that the reservation regarding oil, gas and mineral rights rendered the title defective. They sought rescission of the contract and a return of their deposit.
Following a nonjury trial the trial court correctly concluded in its final judgment that the Bridgers could not have conveyed a marketable title because of the oil, gas and mineral rights reservation. Brent v. Corbin, 252 Miss. 464, 173 So.2d 430 (1965); 33 Fla.Jur. Vendor & Purchaser § 75 (1960). The court continued, however:
C. The obvious reason for the clause [that the buyer would take title subject to “restrictions and matters appearing on the plat or otherwise common to the (subdivision)”] is to charge the prospective purchaser with notice of such things as subdivision restrictions which limit the use of all the property in the subdivision. Obviously the reason for such a clause is to require the purchaser to investigate such matters prior to entering into the contract and to satisfy himself as to whether they affect his decision to purchase the property.
D. The outstanding interest dealt with here differs somewhat from a subdivision restriction since it is an outstanding part of the title proper (an interest in land) as opposed to a limitation as to use of land. The Court finds that the intent, however, is the same in either case. The only purpose for such a clause is to require a prospective purchaser to investigate those matters which are uniform throughout the subdivision and affect the use of the property or its title.
Consequently, the court concluded that by agreeing to take title subject to “restrictions and matters appearing on the plat or otherwise common to the subdivision,” the Hills had to accept a title with mineral rights outstanding in favor of a third party. We disagree.
Subdivision restrictions commonly affect the character of land use, prescribe building *1214 requirements and establish setback lines, while “matters appearing on the plat” commonly involve easements and set backs. The Florida Bar, Florida Real Property Sales Transactions § 9.17 (1978). See The Florida Bar, Florida Real Property Practice I §§ 13.7 — .13 (2d ed. 1971). These differ significantly from a reservation of minerals of any other interest in the land. See The Florida Bar, Florida Real Property Practice II §§ 9.27 — .28 (2d ed. 1975).
Restrictions and easements common to a subdivision are generally imposed for the benefit of the surface owner. On the other hand, reservations of interest such as the mineral rights reserved here benefit only their owners and may be detrimental to the surface owners. For example, an owner of an interest in minerals is entitled to enter the land and explore for minerals without liability to the surface owner as long as injury to the surface is reasonable. P & N Investment v. Florida Ranchettes, Inc., 220 So.2d 451 (Fla. 1st DCA 1969). Cf. § 715.06, Fla.Stat. (1979).
Moreover, a prospective purchaser can more readily determine the existence of restrictions and easements than the existence of title reservations. The contract clause at issue here requires a prospective purchaser to reasonably investigate permitted land uses, restrictions and easements appearing on the plat which are common to the subdivision. This type of investigation may be within the capacity of the average prudent person. To construe the clause to also require a prospective purchaser to investigate reservations of outstanding title interests, even if common to the subdivision, however, would impose an unreasonable burden. Accordingly, we hold the clause refers only to restrictions and easements but not to title interests.
We have examined and reject the other points raised by the Hills.
We reverse the trial court’s judgment allowing the Bridgers to retain the Hills’ deposit and its award of attorney’s fees for services of their counsel. We affirm Owler Realty’s entitlement to a reasonable attorney’s fee chargeable to the deposit for its having interpleaded the conflicting claims of the parties. We remand for further proceedings consistent with this opinion.
HOBSON and CAMPBELL, JJ., concur.