610 So.2d 357 (1992)
SNOW LAKE SHORES PROPERTY OWNERS CORPORATION and Dennis Overstreet, Individually and in his Capacity as President of Snow Lake Shores Property Owners Corporation
v.
Russell SMITH and Wife, Virginia Smith.
No. 90-CA-0225.
Supreme Court of Mississippi.
December 10, 1992.
S. Allan Alexander, Tollison Austin & Twiford, Oxford, William G. Kemp, Holly Springs, for appellants.
No Brief Filed for appellees.
Before ROY NOBLE LEE, C.J., and PRATHER and BANKS, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Snow Lake Shores Property Owners Corporation (hereinafter "Snow Lake") and Dennis Overstreet (hereinafter "Overstreet"), individually and in his capacity as President of the Snow Lake Shores Property Owners Association, appeal from a money judgment entered against them, jointly *358 and severally, on July 20, 1989, by the Chancery Court of Benton County, awarding Russell Smith and his wife, Virginia, the sum of $5,900.00 actual damages and $5,900.00 punitive damages, including attorney's fees and all costs. We reverse and render.
Plaintiffs Russell and Virginia Smith are adult residents of DeSoto County, Mississippi, and property owners in the Snow Lake residential community located in Benton County.
Snow Lake is a non-profit corporation organized for the management of the common property of a residential community located in Benton County and inhabited largely by retirees. Overstreet has been president of Snow Lake since 1985 and is charged with all the powers and duties of supervision and day-to-day operations and management required to run the corporation.
This lawsuit had its genesis in the filing of a complaint for injunctive and other relief by Russell and Virginia Smith on September 30, 1986. The Smiths alleged in their complaint that Snow Lake Corporation and Dennis Overstreet, individually and in his capacity as president of the corporation, had violated the terms and conditions of a contractual agreement providing for the time, place, and method of removal, via a 30 foot wide easement held by the Smiths across Snow Lake property, of an abandoned steel gas pipeline from contiguous property owned by the Smiths.
The complaint alleged that when agents of the Smiths attempted on September 29, 1986, to remove the pipe under the terms of the contractual agreement, Overstreet interfered with the Smiths' right to use their easement, forced them to remove their equipment, and had an employee of the Smiths arrested and jailed.
On the day they filed their complaint, the Smiths obtained a Temporary Restraining Order (TRO) which directed "that the Parties hereto abide by the terms, conditions and spirit of their previous Agreement." Snow Lake and Overstreet did not oppose a conversion of the TRO into a Preliminary Injunction pending a decision on the merits, and this conversion was accomplished on October 10, 1986.
Snow Lake and Overstreet answered the complaint on November 1, 1986, and denied the Smiths were entitled to injunctive relief or damages in any form. Following the usual discovery, the matter was tried before the chancellor on February 23-24, 1988.
At the close of all the proof, the court took the matter under advisement with the stated intention of ruling on the merits no later than Thursday, March 3, 1988. The chancellor, however, did not render an opinion until July 12, 1989, and a final judgment was not entered until July 20, 1989. An order overruling Snow Lake's Motion to Set Aside Judgment was entered on January 16, 1990.

FACTS
On October 5, 1983, Russell and Virginia Smith purchased Lot 148 and one-half (1/2) of Lot 147 in the Snow Lake Shores Subdivision in Benton County. The Smiths, in the same deed, were granted a forty (40) acre tract of land adjacent to Snow Lake Shores which was not a part and parcel of the subdivision itself. At the same time, the Smiths acquired a thirty (30) foot wide private easement across Lot 233, known also as the East Well Lot, of Snow Lake Shore Subdivision. Lot 233, owned by Snow Lake, was so named because a water well and other key components of Snow Lake's water system lay directly underneath the lot, if not underneath the Smiths' private easement.
The forty (40) acre tract purchased by the Smiths was crossed by over 5,000 feet of steel gas pipeline which had been abandoned by Tenneco to the owners of the property. This abandoned pipeline ran from the Smiths' property across property owned by Snow Lake, and the proof reflects the Smiths contemplated from the beginning the removal and sale of their pipe.
Overstreet testified without contradiction the roads at Snow Lake are third grade roads put in strictly for use by the residents. *359 The load limit for the roads is six (6) tons or 12,000 pounds, and there are signs to that effect posted throughout the subdivision. The roads are susceptible to damage from vehicles which exceed the load limit, and on several previous occasions the roads have been damaged by vehicles carrying excessive loads.
The proof was undisputed that Snow Lake has required persons or contractors whose vehicles far exceed the allowable load limits but which nevertheless must traverse Snow Lake roadways to obtain and present to Snow Lake officials certificates of insurance specifically covering any damage which might be caused to Snow Lake property as a result of excessive weight.
After purchasing the land, the Smiths negotiated with several different contractors for the removal and sale of their pipe. By August 1, 1986, the Smiths had contracted with Carney Smith, a private contractor from Olive Branch, to extract the pipe from the ground, cut it into pieces, and supervise its transportation and removal off their property.
The location of the Smith property was such that in order to reach public roads, the contractor and his laborers would have to transport the pipe across the easement running through the East Well Lot onto roads owned and maintained by Snow Lake. To unearth the pipe, Smith brought in heavy equipment which far exceeded the load bearing capacity for Snow Lake Roads.
On August 1, 1986, Carney Smith, the plaintiffs' contractor, began moving the equipment over Snow Lake's roads to the Russell Smith property. Overstreet and the Sheriff of Benton County intercepted the convoy and prevented the equipment from entering Snow Lake property. The contractors then entered the area through the back side of the Russell Smith property and began work on unearthing the pipe.
Overstreet, who was monitoring the situation closely, again contacted the Sheriff of Benton County and asked him to put a halt to the bulldozing across the East Well Lot because the operators were coming dangerously close to damaging the Snow Lake water tank for the east half of the subdivision and were actually jeopardizing the well itself.
Delays notwithstanding, the contractor removed the pipe from the ground within a period of eight (8) to ten (10) days. It was cut into sections and stockpiled on the Russell Smith property to await transportation to Bolivar County.
Because of serious concerns about the Smiths' stated intentions of removing the pipe over Snow Lake roads without presenting evidence of any insurance to cover damage resulting therefrom, Snow Lake filed a complaint and a motion for a temporary restraining order. By August 20, 1986, lawyers for both sides had agreed that the matter should be resolved without intervention by the courts. On September 12, 1986, the parties signed the written agreement ultimately sued upon in this case.
Paragraph 5 of the agreement required the contractor engaged by the Smiths to remove and haul pipe to provide Snow Lake with a certificate of insurance in the minimal amount of $250,000.00 to indemnify Snow Lake in the event of any loss or damage resulting from the activities of the contractor. Proof offered by the Smiths themselves demonstrated without dispute the understanding of the parties and their attorneys that the Certificate of Insurance would be submitted to Snow Lake in advance of transportation of the pipe so that it could be approved for legal sufficiency.
There is also no dispute about the fact that neither the Smiths nor their contractor ever provided the required Certificate of Insurance to Snow Lake or to its attorneys in a form that was acceptable to both parties.
Paragraph 6 of the agreement required the Smiths or their contractor to obtain work permits from the Snow Lake Office for each member of the crew engaged in loading and transporting the pipe over Snow Lake property. No work permits were applied for or issued to any person after Snow Lake was informed on September *360 26, 1986, that J.W. Hodum would not be the contractor involved in the project.
Finally, to avoid damage to the water system by the Smiths or their contractor, paragraph 4 of the agreement required Snow Lake to bulldoze a temporary road for removal of the pipe over the Well Lot in exchange for the Smiths' agreement to pay to Snow Lake the labor cost of $200.00. Snow Lake built the road, and although a check was tendered, counsel for the Smiths later stopped payment on the check. That amount has never been paid.
The last communication between the parties or their attorneys took place on the afternoon of September 26, 1986, when counsel for the Smiths called the attorney for Snow Lake and informed him that J.W. Hodum would not be hauling the pipe, that as soon as the Smiths located another contractor, their attorney would call counsel for Snow Lake, identify the contractor and provide the required certificate of insurance.
On the evening of September 29, 1986, Carney Smith, the contractor who had excavated the pipe for the Smiths, entered Snow Lake property at approximately 9:30 p.m. with two eighteen wheelers and a forklift. The convoy was intercepted by the Sheriff of Benton County who notified Overstreet. Overstreet met the Sheriff at the Well Lot where the drivers had parked their vehicles.
No certificate of insurance had been presented for approval, and no work permits had been obtained by any of the workers. Carney Smith and the drivers subsequently followed the sheriff to the stationhouse where Overstreet signed an affidavit charging Smith with trespassing. Smith was thereupon arrested on the strength of that affidavit and spent the rest of the night in jail. He later filed a separate suit for malicious prosecution.
The following day, September 30, 1986, the Smiths initiated this action and obtained their ex parte TRO against Snow Lake. Although the complaint contained allegations other than the breach of contract claim concerning the agreement made between the parties, these claims were found adversely to the Smiths and are not at issue in this appeal.

LAW

1. Scope of Review
Our review is limited.
Where  as here  a trial judge sits without a jury, this Court will not disturb his factual determinations where there may be found in the record substantial supporting evidence.
Put another way, this Court must affirm a chancellor on a question of fact unless upon review of the record we be left with the firm and definite view that a mistake has been made.
Rice Researchers, Inc. v. Hiter, 512 So.2d 1259, 1264 (Miss. 1987) (citations omitted).
Findings of a Chancellor will not be disturbed or set aside by this Court on appeal unless we are of the opinion the decision made by the trial court was manifestly wrong and not supported by substantial, credible evidence, Smith By and Through Young v. Estate of King, 579 So.2d 1250, 1251 (Miss. 1991); Williams v. Evans, 547 So.2d 54, 58 (Miss. 1989); Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983), or unless an erroneous legal standard was applied. Bell v. Parker, 563 So.2d 594, 596-97 (Miss. 1990). "When the determination is one of law rather than fact, `the familiar manifest error/substantial evidence rule does not prevent this Court from conducting a de novo review of the chancellor's finding.'" Stevenson v. Stevenson, 579 So.2d 550, 552-53 (Miss. 1991) (quoting Planters Bank & Trust Co. v. Sklar, 555 So.2d 1024, 1028 (Miss. 1990)).

2. The Appellees' Failure to File a Brief
We note at the outset that the Smiths, appellees in this case, have failed to file a brief.
If an appellee fails to file the appellee's brief as required, such brief if later filed may be stricken from the record on motion of appellant or on the Court's own motion. An appellee who fails to file a *361 brief will not be heard at oral argument except by permission of the Court.
Miss.Sup.Ct.R. 31(d) (1988).
Although unsaid in 31(d), "[t]he rule has been stated in numerous cases that the failure of the appellee to file a brief is tantamount to a confession of error and will be accepted as such unless we can with confidence say, after considering the record and brief of appellant, that there was no error." Burt v. Duckworth, 206 So.2d 850, 853 (Miss. 1968). See also Queen v. Queen, 551 So.2d 197, 199 (Miss. 1989); Sparkman v. Sparkman, 441 So.2d 1361, 1362 (Miss. 1983); State v. Maples, 402 So.2d 350, 353 (Miss. 1981). This rule is reaffirmed in today's decision.
The chancellor found that Snow Lake and Overstreet breached the agreement, and as a consequence of that breach the Smiths were entitled to damages. We cannot with entire confidence reach the same result.

3. Who Breached the Contract in the First Instance?
The complaint filed by the Smiths alleged that they executed an agreement with Snow Lake setting forth the terms and conditions under which they would utilize their easement and remove the pipe from their property. They complained that when their agents attempted on September 29, 1986, to remove the pipe under the terms of the agreement, Snow Lake and Overstreet interfered with the right to use their easement to transport the pipe.
"Where a private right of way exists, the owners of the dominant and servient tenements must use such way in such a manner so as not to interfere with one another's utilization thereof." Feld v. Young Men's Hebrew Association of Vicksburg, 208 Miss. 451, 458, 44 So.2d 538, 540 (1950) (quoting 2 Thompson on Real Property, § 584 p. 190 (Permanent Ed.)); Sumrall v. United Gas Pipe Line Co., 232 Miss. 141, 147-49, 97 So.2d 914, 916-17 (1957); Lindsey v. Shaw, 210 Miss. 333, 339-40, 49 So.2d 580, 584 (1950); D.L. Fair Lumber Co. v. Weems, 196 Miss. 201, 219-21, 16 So.2d 770, 772-73 (1944). Snow Lake, as grantor of the easement, had a right to protect its water system, key components of which lay directly beneath and adjacent to the easement held by the Smiths. By the same token, the Smiths had an affirmative obligation to avoid damage to Snow Lake property in using their easement across the East Well Lot.
The chancellor found as a fact the Smiths and their contractor were "acting pursuant to the agreement previously executed on [September 12, 1986]," when Carney Smith and his drivers entered Snow Lake property during the nighttime on September 29th. The chancellor further found that no explanation was offered for the extreme actions taken by Snow Lake and Overstreet on the night of the 29th and that the Smiths were entitled to damages because the plaintiffs breached the agreement concluded between the parties.
We think these findings were manifestly wrong. There is no evidence in the record that any person at any time prior to September 29th presented a certificate of insurance to Snow Lake which complied with paragraph 5 of the agreement between the parties. Indeed, the evidence is overwhelmingly to the contrary. The parties and their attorneys specifically agreed to a particular course of conduct, and that intended course of conduct was ignored by the Smiths and their contractor. In short, the proof shows the Smiths breached the agreement in the first instance.
The Smiths' failure to provide the required certificate of insurance relieved Snow Lake and Overstreet from performance of the terms of the contract. "When either party to a contract fails to perform any of his terms, the contract has been broken." Matheney v. McClain, 248 Miss. 842, 849, 161 So.2d 516, 519-20 (1964). Moreover, a party who has breached a contract may not himself maintain a suit for breach of the contract against the other party. Brent v. Corbin, 252 Miss. 464, 471, 173 So.2d 430, 433 (1965) ("A party to a contract who is himself in default cannot maintain a suit for its breach."). See also Dawson's Dependents v. Delta Western Exploration Co., 245 *362 Miss. 335, 343, 147 So.2d 485, 487 (1962); National Burial Association v. Wright, 21 So.2d 589, 590 (Miss. 1945).
In addition to their failure to present a certificate of insurance, the Smiths never obtained the required work passes, and Snow Lake never received the $200.00 charged for bulldozing a temporary road across the East Well Lot as required by the terms of the contract. We agree with Snow Lake and Overstreet that these were material breaches and that the chancellor was manifestly wrong when he failed to take into account the undisputed evidence of the Smiths' multiple breaches. Of course, the Smiths, having filed no brief, make no claim otherwise.

4. Punitive Damages
The chancellor found as a fact the actions of Overstreet were "typical of what may be termed high-handed oppression for which exemplary (or punitive) damages are largely designed," and concluded that "exemplary damages are certainly to be awarded in this action." He recognized, on the other hand, there was "no proof upon which to predicate the assessment of exemplary (or punitive) damages." Nevertheless, the chancellor fixed punitive damages in the amount of $5,900.00, the same sum awarded to the plaintiffs as actual damages.
"As a general rule, exemplary or punitive damages are not ordinarily recoverable in actions for breach of contract." South Central Bell v. Epps, 509 So.2d 886, 892 (Miss. 1987). "[T]hey are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." Blue Cross & Blue Shield of Mississippi, Inc. v. Maas, 516 So.2d 495, 496 (Miss. 1987). They are also recoverable "only in extreme cases." Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 460 (Miss. 1983). See also Gardner v. Jones, 464 So.2d 1144, 1148 (Miss. 1985). Furthermore, since punitive damages are assessed as an example and warning to others, "they should be allowed only with caution and within narrow limits." Consolidated American Life Ins. Co. v. Toche, 410 So.2d 1303, 1304-05 (Miss. 1982).
This is not, in our opinion, an extreme case. We believe the chancellor's award of punitive damages was manifestly wrong for at least two reasons.
First, the award of punitive damages was not supported by the existence of actual damages. T.G. Blackwell Chevrolet Co. v. Eshee, 261 So.2d 481, 485 (Miss. 1972). Moreover, the chancellor's finding that Overstreet's actions constituted "highhanded oppression" for which "no explanation [was] offered by the Defendants" was not supported by substantial evidence.
Second, we agree with Snow Lake that the court's arbitrary choice of a sum to award as punitive damages in the face of its own acknowledgement that there was "no proof upon which to predicate the assessment of exemplary damages" was erroneous as a matter of law.
The chancellor found that attorney's fees were an element of actual damages and were recoverable because the actions of Overstreet support the awarding of punitive damages. The awarding of punitive damages was improper, and the amount of attorney's fees, as acknowledged by the chancellor, was not established by the proof. Therefore, we also reverse the awarding of attorney's fees.
The usual case for punitive damages involves either "gross negligence resulting in personal injuries or ... some flagrant act by a wrongdoer which amount[s] to willful, malicious, or wanton conduct." Mutual Life Insurance v. Estate of Wesson, 517 So.2d 521, 531 (Miss. 1987), cert. denied, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988). See also Whittington v. Whittington, 535 So.2d 573, 583 (Miss. 1988). Neither situation exists here.
The decision of the chancellor imposing liability, jointly and severally, against Snow Lake and Overstreet and awarding damages and attorney's fees to the Smiths is reversed and rendered.
REVERSED AND RENDERED.
*363 HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and ROBERTS, JJ., concur.
McRAE, J., not participating.