# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01644-SCT

*PATRICIA A. LOUK*

*v.*

*JOHN MARK LOUK*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/16/1998 |
| TRIAL JUDGE: | HON. JAMES H. C. THOMAS, JR. |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | MAURA D. McLAUGHLIN |
| ATTORNEYS FOR APPELLEE: | JOHN W. LEE, JR. |
| | PAUL RICHARD LAMBERT |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART - 06/22/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/13/2000 |

**BEFORE BANKS, P.J., WALLER AND DIAZ, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. This case involves a divisive and emotionally charged suit for divorce. Patricia A. (Patty) Louk and John Mark (John) Louk were married in September of 1980. They had three children: Jessica Donnell, born in 1981, Amanda Lea, born in 1984, and Jonica Renea, born in 1988. Patty had a child, Jeremy, born in 1976, from a previous marriage, and John adopted Jeremy following his marriage to Patty.

¶2. John and his father, R. L. Louk, began a business enterprise in 1989 manufacturing Ol' Man Tree Stands, a portable tree stand used by hunters. The business was incorporated as L & L Enterprises, Inc. Patty was employed by the corporation and performed a wide range of jobs from bookkeeping to cleaning. Patty had been a homemaker prior to her employment with her husband's company.

¶3. In February of 1997, Patty sued John for divorce on the grounds of habitual cruel and inhuman treatment. John counterclaimed for divorce on grounds of adultery. During the 20-month period following the filing of the initial complaint and the Chancellor's entry of final judgment for divorce, the parties were continuously filing motions and appearing for hearings in the Chancery Court. They sought temporary orders concerning child custody and support, visitation for John, maintenance for Patty, and several contempt

citations because neither party complied with the temporary orders.

¶4. Eventually, the parties consented to a divorce on the ground of irreconcilable differences, reserving the following issues for the Chancellor's consideration and judgment: (1) whether Patty had any interest or entitlement in L & L Enterprises; (2) John's visitation with the children; (3) the amount of child support to be paid by John; (4) the division of household furnishings and appliances; and (5) who should claim the minor children for purposes of state and federal income taxation. The parties included the following language in their consent agreement:

> The parties do further agree to submit the above referenced issues to the Court for determination based on the matters contained in the pleadings, the documents and other items of evidence stipulated into evidence by the parties and sworn affidavits of the parties as to all issues and upon sworn affidavits of the expert witnesses listed by both parties with regard to the issue of visitation by Mr. Louk with the minor children of the parties. . . .

¶5. The following facts are revealed by the pleadings and filed affidavits:

> A. Patty claimed that John had been physically and verbally abusive towards both the children and her. She further claimed that John had killed cats and beaten dogs in the presence of the children, and the children feared their father and feared for the well-being of the family pets.

> B. Throughout the pendency of the divorce, the Chancellor ordered that all visitation between John and his children be supervised. Often the children chose not to attend scheduled visitation; neither parent forced the children to visit with John.

> C. Dr. Beverly Smallwood, the psychologist who treated John and the children, opined by affidavit that John was well on his way to establishing a productive relationship with his children and that supervised visitation was unnecessary, although continued counseling was necessary.

> D. Patty lived in the home with the children after the separation and received $750 a month in child support from John.

> E. Patty was unemployed from the date her employment with L & L Enterprises was terminated until the time of the divorce.

> F. John claimed a net monthly income of $3,950. His affidavit alleges that he owns 7,000 shares of stock in L & L Enterprises. The stock was valued at $98.29 per share by May & Company, experts retained by John. John's stock, therefore, was worth $688,030.

> G. Patty claimed an interest in L & L Enterprises, which she requested be paid to her in the form of lump sum alimony. Patty disputes the value of L & L Enterprises, pointing out the CPA firm of Nicholson & Co. showed that L & L Enterprises had a total assets value of $2,646,245 for the company, of which 70% or $1,852,371, belonged to John.

> H. Since Patty had no income other than temporary child support during 1997, John claimed the minor children as dependents for purposes of federal and state income taxation.

> I. Patty and John agreed to the following: they should have joint legal custody of all three children,

with Patty enjoying primary, physical custody; John should provide medical insurance for the children, and life insurance on himself with the children as beneficiaries; John should pay all of the children's medical bills and joint debts of the marriage; Patty would convey her interest in the real property in return for $32,500, or one-half of its equity; Patty would keep the 1993 family van, and John would make the last payments; Patty would receive ownership of the 1992 Mazda driven by Jessica; John and Patty would be responsible for their own legal fees; Patty waived all rights to periodic or rehabilitative alimony, but not a lump sum payment in exchange for her interest in L & L Enterprises; and John was not the father of Patty's child born during the pendency of the divorce, and should bear no financial responsibility for same.

¶6. The Chancellor's judgment incorporated the above agreed-upon provisions and a memorandum opinion. His findings as to the disputed issues were as follows: John received unsupervised visitation as set out in the schedule, namely every other weekend and some holidays. John and the children were ordered to continue their counseling sessions with Dr. Smallwood. Custody and visitation rights would be revisited by the court 180 days after the judgment was entered. John would pay to Patty $500 a month for each child for support, totaling $1,500 a month. John would claim the three children as dependents for purposes of income taxation. Patty received $398,080.20 in lump sum alimony, representing 40% of John's interest in L & L Enterprises based on the stockholder's equity; $100,000 of the award was to be paid within 30 days of the final judgment, the remainder to be paid annually in four equal installments. The parties should equally divide the furnishings and appliances of the marital home.

¶7. Dissatisfied with the judgment, Patty has appealed to this Court raising five issues:

**I. The court erred by awarding unsupervised visitation to John without addressing the emotional and physical abuse of the minor children.**

**II. The court erred by failing to consider, and make findings on, the tax consequences of the equitable distribution and the needs of the parties for financial security.**

**III. The court erred by granting the dependency exemptions for the minor children to John.**

**IV. The court erred in finding that John owned 70% of L & L Enterprises, Inc.**

**V. The court erred in accepting the parties' stipulation that the contested issues would be determined on the pleadings, the documents, other items stipulated into evidence and the affidavits, when there was no hearing or trial before the Chancellor on any issue.**

## STANDARD OF REVIEW

¶8. "Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule." *Magee v. Magee*, 661 So. 2d 1117, 1122 (Miss. 1995). An appellate court may reverse a chancellor's finding of fact only when there is not "substantial, credible evidence" justifying his finding. *Williams v. Rembert*, 654 So. 2d 26, 28 (Miss. 1995) (quoting *Snow Lake Shores Property Owners Corp. v. Smith*, 610 So. 2d 357, 360 (Miss. 1992)). "Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." *Johnson v. Johnson*, 650 So. 2d 1281, 1285 (Miss. 1994) (citing *McEwen v. McEwen*, 631 So. 2d 821, 823 (Miss. 1994)).

<u>DISCUSSION</u>

**I. The court erred by awarding unsupervised visitation to John without addressing the emotional and physical abuse of the minor children.**

¶9. Patty argues that the Chancellor did not make sufficient findings or a reasoned explanation for his decision to grant unsupervised, as opposed to supervised, visitation to John, given the allegations of John's abuse towards his family. Patty believes that the Chancellor should have entered specific findings of fact on the issue. Mississippi Rule of Civil Procedure 52(a) provides: "In all actions tried upon the facts without a jury the court may, and shall upon the request of either party to the suit or when required by these rules, find the facts specifically and state separately its conclusions of law thereon and judgment shall be entered accordingly." The Chancellor, therefore, has discretion to make specific findings absent a request by the parties. In this case, Patty did not make a request for findings of fact and conclusions of law.

¶10. Patty cites *Tricon Metals & Servs., Inc. v. Topp*, 516 So. 2d 236 (Miss. 1987), where this Court held that trial courts should enter specific findings of fact and conclusions of law in matters of great complexity, even absent a request from the parties involved. In *Tricon Metals*, the Court stated, "Where, however, a case is hotly contested and the facts greatly in dispute and where there is any complexity involved therein, failure to make findings of ultimate fact and conclusions of law will generally be regarded as an abuse of discretion." *Id.* at 239. While it is arguable that any matter regarding child custody is a matter of great complexity, in this case the facts do not seem to be in great dispute. Dr. Smallwood testified through affidavit that supervised visitation was unnecessary. Patty offered no evidence, other than her own allegations of events that occurred before John and the childrens' counseling with Dr. Smallwood. No contrary expert opined that John posed a physical danger to his children and that supervised visitation was needed.

¶11. The Chancellor did, however, attach to the final judgment a memorandum opinion, wherein he stated: "After a full and comprehensive review and consideration of the affidavits presented by the parties and exhibits submitted the Court makes the following findings and adjudication . . . ." The Chancellor did offer some explanation for his rulings. As to the subject visitation, the Chancellor opined:

> While the materials presented indicate a pattern of conduct on the part of Defendant [John] which creates concern about his temperament he should have an opportunity to develop a proper relationship as a father with his children. The Court is concerned about his reported conduct and ability to have a relationship with his children without constant emotional strain on the children as well as constant upheavals from the parties, especially Plaintiff [Patty]. The Court is also concerned about the obvious role model and example deficiencies set by Plaintiff in having a relationship resulting in a child being born out of wedlock and especially during the separation of the parties by a father other than Defendant. Each of these concerns creates confusion for proper development of the minor children as a direct result of the dysfunctional environment created by the parties in this matter and is detrimental to the emotional development and well being of the children. In that light, custody and visitation is to be reviewed in this matter in 180 days, and it is directed that the parties, both Plaintiff and Defendant, and their minor children, within 30 days of a final judgment in this cause, are to schedule and keep appointments for counseling with Dr. Beverly Smallwood, Ph.D., toward the end of maintaining a continued and positive relationship by Defendant and Plaintiff with their children.

The Chancellor clearly considered the evidence presented by the parties, and maintaining continuing jurisdiction over this matter, decided the issue of visitation. In fact, given the affidavit of Dr. Smallwood, the Chancellor had adequate evidence to award unsupervised visitation in this case. His decision is not an abuse of discretion, and the Chancellor's decision is affirmed on this issue.

## II. The court erred by failing to consider, and make findings on, the tax consequences of the equitable distribution and the needs of the parties for financial security.

¶12. In this assignment of error, Patty alleges that the Chancellor should have looked to the factors set out in *Ferguson v. Ferguson*, 639 So. 2d 921, 928 (Miss. 1987), in determining her interest in L & L Enterprises. Patty asserts that the Chancellor's findings and judgment do not indicate that the Chancellor considered her financial security or the tax consequences of his award. Patty is correct that the memorandum opinion does not specifically cite or refer to the *Ferguson* factors in any meaningful analysis.

¶13. Although the Chancellor in this case made an award of lump sum alimony as specifically requested by Patty, it appears that the award was actually in the nature of an equitable distribution of property. Indeed, John's brief specifically acknowledges that the award was a division of marital assets not taxable to Patty as income, nor deductible by John. Because this award involves distribution of marital property, we reverse the Chancellor's alimony award and remand the case for the Chancellor to make specific findings of fact regarding the factors set forth by this Court in *Ferguson*, including the tax consequences to each party, and to allow for an equitable division of the parties' interests in L & L Enterprises based on those findings.

## III. The court erred by granting the dependency exemptions for the minor children to John.

¶14. Again Patty asserts that the Chancellor should have taken into consideration that the award of lump sum alimony would be taxable to her when the Chancellor determined who would receive the tax exemptions for the minor children. As discussed above, this Court is uncertain that the award in question would amount to a tax liability on Patty's part. However, since that award is reversed, Patty's reasoning in this assignment of error is moot.

¶15. As to the award of the tax exemptions to John, we find that the Chancellor's decision was not manifestly erroneous or an abuse of discretion given the facts of this case. Since Patty is not gainfully employed and John is paying $1,500 per month to support the children, which is well above the statutory guidelines for support, John is, at least at the present time, better able to use the tax exemptions.

¶16. In *Nichols v. Tedder*, 547 So. 2d 766 (Miss. 1989), this Court held that a Chancellor could order the custodial parent to waive tax exemptions for dependent children in favor of the non-custodial spouse. The Court engaged in a thorough analysis of the differing tax consequences, but did not set forth specific factors that a Chancellor should consider in determining which spouse should be entitled to the tax exemptions.

¶17. Income of the spouses is not the only factor that should be considered in determining who should be awarded the tax exemptions, especially considering the non-economic but nevertheless valuable contributions contributed by the custodial parent. Other states have set forth specific guidelines for such a determination; for example, in Indiana, the judge should consider, at a minimum: (1) the value of the exemption at the marginal tax rate of each parent; (2) the income of each parent; (3) the age of the child(ren) and how long the exemption will be available; (4) the percentage of the cost of supporting the

child(ren) borne by each parent; and (5) the financial burden assumed by each parent under the property settlement in the case. ***Glover v. Torrence***, 723 N.E.2d 924, 938 (Ind. Ct. App. 2000).

¶18. Although many cases do not involve incomes or estates significant enough to justify this type of analysis, a Chancellor would be well-served to consider these factors where appropriate.

¶19. In this case, however, the Chancellor's decision does not appear to be an abuse of discretion. Patty had no significant independent income from which she would enjoy any advantage in having the dependent child exemptions. There is nothing, however, which prohibits Patty from petitioning for modification of this award should she become gainfully employed and have her household situated so that an evaluation can be made by the Chancellor to allocate the exemptions. The judgment is affirmed as to this issue.

### IV. The court erred in finding that John owned 70% of L & L Enterprises, Inc.

¶20. Patty states that John actually owns 74.5 percent of L & L Enterprises, and John concedes that this is true. This is not a contested issue, but appears to be a simple mathematical error on the part of the Chancellor. The Chancellor ruled that Patty should receive 40% of John's interest in the corporation, which the Chancellor found to be 70% or 7,000 shares of 10,000 outstanding shares. In actuality, the corporation had repurchased 600 shares of stock, so that he owns 7,000 of 9,400 shares, or approximately 74.5%. There is, then, a discrepancy between the Chancellor's stated intent of awarding Patty 40% of John's interest and the actual value of the award that was made. Out of an abundance of caution, the Chancellor's judgment is reversed and remanded on this issue to reconsider what appears to be a mathematical error.

### V. The court erred in accepting the parties' stipulation that the contested issues would be determined on the pleadings, the documents, other items stipulated into evidence and the affidavits, when there was no hearing or trial before the Chancellor on any issue.

¶21. Patty alleges in this assignment of error that, despite the agreement of the parties that there would be no hearing on this matter, the Chancellor should have nonetheless held a hearing. This Court addressed this issue in ***Sandlin v. Sandlin***, 699 So. 2d 1198 (Miss. 1997), where the parties agreed to submit their testimony in the form of affidavit, with each party offering counter-affidavits to those submitted by the opponent. The Court acknowledged that the parties had waived their right of confrontation and cross-examination. In addition, the Court stated that trial by affidavit should be avoided except for in the summary judgment context under Rule 56. ***Id.*** at 1205. However, since "both parties made a 'knowing and intelligent' waiver of their respective rights to cross examination, allowing the chancellor to rely upon their affidavits in reaching his decision, we find that this issue is without merit." ***Id.*** Similarly in this case, the parties both knowingly and voluntarily consented to a decision by the Chancellor without a trial or hearing. An open hearing may be a more desirable avenue for addressing contested issues as it gives the Chancellor an opportunity to observe first hand the character and demeanor of the parties and judge their credibility. Nevertheless, in this case, the Chancellor was presented with more than adequate factual evidence to make his decision. In addition, the Chancellor had the opportunity to observe the parties and consider many underlying issues in this case during the contempt hearings in this matter prior to rendering his final judgment. There was no abuse of discretion or manifest error on the part of the Chancellor for respecting the agreed consent in this case.

### CONCLUSION

¶22. For these reasons, the judgment of the Chancery Court of Forrest County is reversed in part as to the division of marital property, and this case is remanded to the Chancery Court of Forrest County to make specific findings of fact and conclusions of law regarding the division of marital property, namely the interests of the parties in L & L Enterprises, Inc., and to make a division based on those findings of fact and conclusions of law. In all other respects, the judgment below is affirmed.

¶23. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., SMITH, MILLS, COBB AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, JUSTICE, DISSENTING:**

¶24. This is a case where there was a property settlement agreement prior to an irreconcilable differences divorce in which Patty, the wife, agreed to divide the marital property and further agreed that any interest in her husband's business, L & L Enterprises, be awarded to her as lump sum alimony, which the chancellor did. We have always required that males adhere to these property settlement "contracts" that they enter into prior to an irreconcilable differences divorce, so should we also require that females be bound by the terms as well. What is sauce for the gander is sauce for the goose. Accordingly, I dissent.

¶25. The property settlement between the parties to divide the marital property and give Patty "lump sum alimony" should be upheld. **In the contract,[1] Patty specifically requested that the chancellor determine what interest, if any, she had in L & L Enterprises and that such interest be awarded as lump sum alimony and therefore waived her rights to any modification of the settlement in the future.** This Court has "historically recognized that parties may upon dissolution of their marriage have a property settlement incorporated [into] the divorce decree, and such property settlement is not subject to modification." *East v. East*, 493 So. 2d 927, 931 (Miss. 1986); *see also* **McDonald v. McDonald**, 683 So. 2d 929, 931 (Miss. 1996); *Taylor v. Taylor*, 392 So. 2d 1145, 1147 (Miss. 1981); *McKee v. McKee*, 382 So. 2d 287, 289 (Miss. 1980). This Court has also held, "alimony awarded in a lump sum, or in gross constitutes a fixed liability of [a party] and [their] estate and cannot be modified." *East*, 493 So. 2d at 931; *Wray v. Wray*, 394 So. 2d 1341 (Miss. 1981); *Butler v. Hinson*, 386 So. 2d 716 (Miss.1980); *Schaffer v. Schaffer*, 209 Miss. 220, 46 So. 2d 443 (1950); *Robinson v. Robinson*, 112 Miss. 224, 72 So. 923 (1916); *Guess v. Smith*, 100 Miss. 457, 56 So. 166 (1911). Since this divorce is based on irreconcilable differences, this matter is also governed by statute. Miss. Code Ann. § 93-5-2(3)(1994) specifically states that:

> If the parties are unable to agree upon adequate and sufficient provisions for the custody and maintenance of any children of that marriage or any property rights between them, they may consent to a divorce on the ground of irreconcilable differences and permit the court to decide the issues upon which they cannot agree. Such consent must be in writing, signed by both parties personally, must state that the parties voluntarily consent to permit the court to decide such issues, which shall be specifically set forth in such consent, and that **the parties understand that the decision of the court shall be a binding and lawful judgment**.

(Emphasis added.)

¶26. Since the parties were unable to agree what percentage interest, if any, Patty had in L & L Enterprises,

she specifically requested in accordance with section 93-5-2(3), that the chancellor make that determination and further **requested that he classify that amount as "lump sum alimony."** There is an old maxim that you should be careful what you wish for because you just may get it. Patty received exactly what she wished for. Per her request, the chancellor determined her interest in L & L Enterprises and awarded that interest as lump sum alimony. Patty cannot come back and now question the chancellor's ruling or modify her agreement and "try again" simply because she does not like the results. "Absent fraud or a contractual provision stating otherwise, neither a property settlement nor lump sum alimony may be modified."*Norton v. Norton*, 742 So. 2d 126, 129 (Miss. 1999); *Mount v. Mount*, 624 So. 2d 1001, 1005 (Miss.1993). Patty has not argued fraud or some contrary contractual provision, and without a showing of either, neither the chancellor nor this Court has the power to "try again" to grant her wish.

¶27. As to the issue of the miscalculation of John's interest in L & L Enterprises, we should make any corrections here. The chancellor held that the percentage was 70 percent. The majority has already shown that the correct number is clearly illustrated in the record as 74 percent. There is no need to send this issue back to the chancellor to re-evaluate the record and make a new determination, when the majority has already stated what percentage is to be used.

¶28. The chancellor did not err in making the requested determination of Patty's interest in L & L Enterprises. The parties clearly stated that they sought a determination from the chancellor of the value of her interest and that the interest be classified as "lump sum alimony." Time and again we have applied the above law and principles to requests of former husbands seeking to modify property settlement agreements containing lump sum alimony provisions, and time and again those requests have been denied. I see no reason to make an exception to our rule here. Obviously, Patty requested the lump sum alimony so that there could be no modification or reduction at a later time by John. What is sauce for the gander is sauce for the goose. Additionally, since the correct calculation as to John's interest in L & L Enterprises has been established by this Court, there is no reason to remand on that issue either. Accordingly, I dissent.

1. The contract labeled "Consent of Parties to Divorce Being Granted on the Basis of Irreconcilable Differences and Stipulation of Issues to be Decided by the Court,"reads in pertinent part:

> ITEM 11: Mrs. Louk does hereby waive any and all right or entitlement she may have to periodic or rehabilitative alimony. **It is the understanding of the parties that the Court may award lump sum alimony as it pertains to Item 14 (A).**

> ITEM 12: The parties further stipulate and agree that Mr. Louk is not the natural father of the child recently born to Mrs. Louk and that the natural father of the child is John O'Flynn and that the Court should include in its Final Judgment appropriate language which would authorize the birth certificate of such child to be changed to accurately reflect that John O'Flynn is the natural father of such child not Mr. Louk.

> ITEM 13: The parties do further agree to execute any and all documents of any kind whatsoever to effectuate the provisions of this Consent.

> ITEM 14: The parties further stipulate that they have not been able to reach an agreement regarding all other issues and voluntarily consent and petition this Court to dispose of all other issues, towit:

> (A) **Any interest or entitlement of Mrs. Louk to L & L Enterprises, Inc.** and/or Patent No. 5,

234,076, **which the parties agree shall be paid to Mrs. Louk as lump sum alimony.** The amount of such lump sum alimony and the schedule of any such payments is to be determined by the Court.

* * *

In executing this consent, the parties acknowledge that they understand that the decision of this Court shall be a binding and lawful judgment, and that this Consent may not be withdrawn by either party without leave of this Court once proceedings are commenced.

(Emphasis added.)