(719 P.2d 23)
No. 57,597

HOMER L. ROSSON, *Appellee,* v. RICHARD D. CUTSHALL, *Appellant.*

Opinion filed May 22, 1986.

*Jon R. Viets,* of Hall, Levy, Lively, Viets, DeVore, & Belot, of Coffeyville, for appellant.

*W. J. Fitzpatrick,* of Independence, for appellee.

Before DAVIS, P.J., SAM K. BRUNER, District Judge, assigned, and MARION W. CHIPMAN, District Judge, assigned.

DAVIS, J.: Defendant Richard D. Cutshall appeals from a judgment granting plaintiff Homer L. Rosson's summary judgment motion for possession of real estate and damages. This appeal is taken only from that portion of the judgment granting plaintiff monetary damages.

On October 21, 1975, Homer L. Rosson and his wife entered into a written contract for the sale of real estate with Richard D. Cutshall and his former wife, Kellie S. Cutshall (now Brashier). The Cutshalls have since divorced and defendant Richard Cutshall was awarded the real estate subject to the contract for sale. Mrs. Rosson is now deceased. Plaintiff Homer Rosson and defendant Richard Cutshall remain as parties on this appeal.

The purchase price set forth in the contract of sale was $27,500 with $2,750 down payment and monthly payments of $225 for a

period of eight years. The contract further provided that the defendant would pay real estate taxes and would maintain hazard and liability insurance on the property. The contract also contained the following clause:

"IN THE EVENT Second Parties [Cutshalls] shall fail, for more than two (2) months to make any deferred payment of interest and principal, or shall become delinquent, First Parties may, at their option, declare this agreement to be null and void, shall be entitled to retake possession of said real property and improvements, and Second Parties will be liable for attorney fees of such repossession. All payments theretofore made by Second Parties shall be deemed to be rents. In the event Second Parties shall fail to maintain hazard insurance or fail to pay real estate taxes as due then First Parties may, at their option, declare this agreement to be in default as if payments of interest and principal were two (2) months in default. Second Parties are responsible for any damages or losses occurring during any interim which property is not insured and all attorney fees resulting from same."

Defendant failed to pay real estate taxes in 1979, 1980, 1981, 1982, 1983 and 1984. Defendant did not pay insurance premiums totaling $1,333. No action was taken by plaintiff under the contract for defendant's failure to comply with the terms of the contract. Throughout this period of time, defendant continued to make installment payments on a somewhat regular basis. The last payment made by defendant was on December 13, 1982. At this time there remained, unpaid, a balance of $19,850.18. Under the terms of the contract, the balance of the purchase price was to have been paid on or before October 21, 1983.

On February 22, 1984, plaintiff filed suit alleging defendant had breached the contract by failing to pay installments and insurance premiums. Plaintiff also sought recovery for the reasonable rental value of the premises since October 21, 1983, which plaintiff alleged was $250 per month.

On October 10, 1984, plaintiff filed a motion for summary judgment seeking an order for possession, quiet title, the reasonable rental value of the premises from the time of default, and costs. Plaintiff filed an affidavit stating the reasonable rental value of the property from October 1975 through September 1984 would be no less than $250 per month.

In granting summary judgment, the court declared forfeiture and cancellation of the real estate contract and ordered defendant to surrender possession to plaintiff. The court further awarded a money judgment for the reasonable rental value of the property at the rate of $225 a month for twenty months (from

March 1983 through October 1984), a total of $4,500. Plaintiff was further awarded $2,627.94 for total taxes due in 1979, 1980, 1982 and 1983, and $755.08 for the 1981 taxes. The 1984 taxes in the amount of $566 were ordered prorated between the parties to the date of plaintiff's taking possession of the property. Plaintiff was also awarded $898 for insurance premiums he had personally paid. Defendant was also ordered to pay a prorated share of the insurance due from November 1984 through November 1985, based on the date defendant surrendered possession of the premises. The cost of the action was assessed against defendant but plaintiff's request for attorney fees was denied.

Defendant Richard Cutshall timely appeals from that portion of the trial court's order granting plaintiff a money judgment. On June 14, 1985, plaintiff filed a motion for costs and fees with the clerk of this court alleging that the appeal taken is frivolous and for the purpose of delay and harassment.

The parties agree that there is no factual dispute. Neither party challenges the propriety of the court's order granting summary judgment.

"Summary judgment is particularly appropriate where the facts are not disputed and the only questions presented are questions of law. [Citation omitted.]" *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 238 Kan. 384, 390, 710 P.2d 1297 (1985).

Given undisputed facts, it was proper for the court to enter summary judgment.

Defendant appeals from the trial court's conclusions of law allowing plaintiff damages for reasonable rental value of the premises following default and the amount awarded for delinquent taxes and insurance premiums. While the court did not specifically address the $2,750 paid by defendant upon the execution of the agreement or the monthly payments paid by defendant over a period of some seven years, terms of the contract upon forfeiture and cancellation vested these amounts in plaintiff as "rents."

The trial court provides no rationale for its award of damages in addition to forfeiture under the terms of the contract other than its conclusions of law granting the same. Perhaps the court was impressed with the fact that defendant was still in possession of the real estate at the time of judgment, having made no payments under the contract for some twenty months after de-

fault. Plaintiff's contention on appeal also addresses this concern:

"Bluntly put, the appellant sought to take advantage of the appellee, an elderly gentleman who resides in Florida by withholding possession of the premises for two years following breach of the contract."

It is difficult to follow this reasoning when plaintiff's cause of action, under the terms of the contract, first accrued when defendant failed to pay property taxes in 1979. When plaintiff finally alleged breach of contract in February of 1984, defendant had not made installment payments for over one year. Although plaintiff himself kept insurance coverage in force, under the terms of the contract, the plaintiff had no obligation to insure the premises and defendant was held responsible for any losses occurring while the property was not insured. Plaintiff's damages appear to be, in large part, of his own making.

Appellee seeks to justify the trial court's decision on equitable principles, relying upon the case of *Karnes Enterprises. Inc.*, v. *Quan,* 221 Kan. 596, 601, 561 P.2d 825 (1977), wherein the court states:

"The substance of the pleadings, not the form of the pleadings, determines the character of an action as equitable or legal in nature. (*Estey v. Holdren,* [126 Kan. 385, 267 Pac. 1098 (1928)]; *Russell v. Bovard,* 153 Kan. 729, 113 P.2d 1064 [1941]; *Cloonan v. Goodrich,* 161 Kan. 280, 167 P.2d 303 [1946]; *City of Osawatomie v. Slayman,* [182 Kan. 770, 323 P.2d 910 (1958)].) The fact that the plaintiff prays for a money judgment only is not controlling where the action is essentially one in equity. (*Sipe v. Taylor,* 133 Kan. 449, 300 Pac. 1076 [1931].)

"Where a court of equity obtains jurisdiction of an action for the purpose of granting some distinctively equitable relief, the court will take jurisdiction for all purposes and determine all issues in the case so that a full, effective, and determinative decree adjusting the rights of the parties may be entered and enforced. (*Seibert and Lykins v. Thompson,* 8 Kan. 65 [1871]; *Martin v. Martin,* 44 Kan 295, 24 Pac. 418 [1890]; *Sanders v. Visser,* 165 Kan. 336, 194 P.2d 511 [1948]; *Place v. Place,* 207 Kan. 734, 486 P.2d 1354 [1971].)"

*Karnes* deals with the basic principles involved in making a determination as to whether the action is essentially an equitable one requiring no jury, or whether the action is essentially a legal one requiring a jury trial. It simply does not provide support for the plaintiff's contention in this case.

A contract entered into by and between the parties should be given effect by the court and when the parties have agreed upon remedies available upon default, a court should be reluctant to add or subtract from such remedies unless such remedies are

clearly implied under law. The terms of the contract provide the remedies available to the parties. The court, in its conclusions of law in this case, expanded on the remedies available to plaintiff in granting the monetary damages in addition to forfeiture.

Generally, the contract in question provided, upon default, for forfeiture by the buyers, possession returned to seller, and retention of monies paid as rents. The law abhors a forfeiture, and therefore equity may, when deemed appropriate under all the circumstances, provide an equitable period of redemption for the purchaser to avoid the harshness of strict contractual forfeiture. This equitable remedy is not expressly provided for in a real estate contractual sale agreement but is well established under Kansas law. *First Federal Savings & Loan Ass'n v. McKain,* 5 Kan. App. 2d 387, 389, 617 P.2d 583 (1980). See also *United States v. Curry,* 561 F. Supp. 429, 431 (D. Kan. 1983); K.S.A. 60-2414. Alternatively, the seller may, under the terms of such contract, upon default, sue on the contract requesting damages for breach of such contract. In the contractual sale of real property, because of the uniqueness of the subject matter of the contract, equity affords the additional remedy of specific performance. This remedy, while not expressly stated in the contract, is well recognized under Kansas law. *Anderson v. Overland Park Credit Union,* 231 Kan. 97, 643 P.2d 120 (1982); *Hochard v. Deiter,* 219 Kan. 738, 549 P.2d 970 (1976); *Wilcox v. Wyandotte World-Wide, Inc.,* 208 Kan. 563, 493 P.2d 251 (1972). Clearly, the two remedies provided for in this contract are inconsistent in that the former disaffirms the contract while the latter affirms the contract.

The resolution of the issue presented to this court is governed by the doctrine of election of remedies, as reflected in *Griffith v. Stout Remodeling, Inc.,* 219 Kan. 408, 411-12, 548 P.2d 1238 (1976):

"The doctrine of election of remedies is an application of one phase of the law of estoppel which prevents one who comes into court, asserting or defending his rights, from taking and occupying inconsistent positions (*Taylor v. Robertson Petroleum Co.,* 156 Kan. 822, Syl. ¶ 4, 137 P.2d 150 [1943], in which the essential elements of the doctrine are stated: [1] The existence of two or more remedies; [2] the inconsistency between such remedies; and [3] a choice of one of them). (pp. 826-827.) The purpose of the doctrine is not to prevent recourse to a particular remedy but to prevent double redress for a single wrong (25 Am. Jur. 2d, Election of Remedies, § 1, p. 647). In Kansas, at least before adoption in 1964 of our present code of civil procedure, we have consistently adhered to a strict

rule on election of remedies to the effect that when the law gives several means of redress or relief predicated upon conflicting theories, the election of one of them operates as a bar against the subsequent adoption of the others (see *Berger v. State Farm Mutual Automobile Insurance Co.*, 291 F. 2d 666, 668, [CA 10, 1961]). We have always held, however, that the doctrine has no application where under the facts the remedies asserted by a party are concurrent and consistent (*Pierce v. Melzer*, 199 Kan. 100, 427 P.2d 632 [1967]). The test of inconsistency of remedies is a factual and logical one. To make actions inconsistent one action must allege what the other denies, or the allegation in one must necessarily repudiate or be repugnant to the other. (*Taylor v. Robertson Petroleum Co.*, [156 Kan. 822,] Syl. ¶ 5).

The court, in *Griffith*, reversed because the appellant was required to make an election of remedies at the pleading stage but its holding does not change the doctrine of election of remedies under Kansas law.

The relief granted by the trial judge here in the form of damages and forfeiture are factually and logically inconsistent in that the former affirms the existence of the contract while the latter disaffirms or repudiates the contract.

Some authority exists for the additional allowance of reasonable rental value by a vendor when he elects to sue in equity for forfeiture. The diverse viewpoints are summarized in 77 Am. Jur. 2d, Vendor and Purchaser § 324, p. 486:

"[I]n some cases where the failure to complete the contract was due to the fault of the purchaser, the right of the vendor to maintain an action against the purchaser for use and occupation has been denied. Thus, it has been denied that a purchaser who defaults in making the stipulated payments may be held liable for a reasonable rent, in an action for use and occupation. Other courts, however, follow the general principle that an implied obligation to pay rent by a vendee in possession arises upon disaffirmance of the purchase contract, whereupon the relationship of vendor and vendee is terminated. Under this view, when the vendee disaffirms the contract, the law implies an obligation on his part to pay for use and occupancy of the land ab initio."

No Kansas cases are cited and no majority rule emerges. In the opinion of this court, a judgment of damages for reasonable rental value, under the terms of the contract in question, tends to blur the very clear statement under Kansas law regarding election of remedies. *Griffith v. Stout Remodeling, Inc.*, 219 Kan. 408. Additionally, such a position tends to undermine the abilities of the parties in an arm's length contractual agreement to predict the results of failure to perform obligations under their agreement. While the failure of defendant in this case to pay in accordance with the agreement was long standing and substan-

tial, the conclusions of the trial judge may have been different had plaintiff, in his original agreement, exacted a larger down payment. For this reason and in the interest of predictability, this court rejects the authority authorizing fair rental value damages in favor of the doctrine of election of remedies.

Plaintiff filed a motion contending that this appeal is frivolous and the court should assess costs and attorney fees. Attorney fees and expenses incurred on appeal are authorized by Supreme Court Rule 7.07 (235 Kan. lxxv), which states, in part:

"If the court finds that an appeal has been taken frivolously, or only for purposes of harassment or delay, it may assess against an appellant or his counsel, or both, the cost of reproduction of the appellee's brief and a reasonable attorney's fee for the appellee's counsel."

"The allowance of an attorney fee on appeal is a matter for determination by the appellate court on motion of a party to the appeal." *Estate of Bingham v. Nationwide Life Ins. Co.*, 231 Kan. 389, 390, 646 P.2d 1048 (1982).

Plaintiff has complied with the rule. However, in light of our decision, plaintiff's contention that this appeal is frivolous is without merit.

We affirm the trial court's order declaring forfeiture of the contract and quieting title in plaintiff. We reverse the trial court's conclusions of law granting damages for the reasonable rental value and for amounts equal to delinquent taxes and insurance. Plaintiff's motion for costs and attorney fees on appeal is denied.

Affirmed in part and reversed in part.