NOT DESIGNATED FOR PUBLICATION

No. 123,731

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SASHA BHADURI,
*Appellant*,

v.

L.M.K. CONSTRUCTION, INC. and LINC MORTENSON,
*Appellees*.

MEMORANDUM OPINION

Appeal from Douglas District Court; MARK A. SIMPSON, judge. Opinion filed August 12, 2022. Affirmed in part, reversed in part, and remanded with directions.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, for appellant.

*Andrew L. Foulston* and *Katy E. Tompkins*, of McDonald Tinker PA, of Wichita, for appellees.

Before HILL, P.J., COBLE, J., and PATRICK D. MCANANY, S.J.

PER CURIAM: This suit and the resulting appeal is an extreme example of the all too frequent scenario of disputes and misunderstandings that arise between home builder and home buyer during the course of construction of a home. Here, Sasha Bhaduri contracted with L.M.K. Construction, Inc. (LMK) to purchase one of two identical houses LMK was in the course of building in a residential development in Lawrence, Kansas. Linc Mortenson was one of the owners of LMK. The foundation of the house Bhaduri selected had already been poured and the framing was going up when the parties entered into a standard form Residential Construction Sale Contract and an addendum which was prepared by Bhaduri and her real estate agent. The agreement called for a base

1

purchase price of $385,000, a $4,000 earnest money deposit, and a closing date on or before June 30, 2016. The addendum to the contract (1) identified features, materials, and appliances to be installed as part of the $385,000 purchase price; (2) established allowances for certain categories of items included in the purchase price; (3) established a process for upgrading items at a mutually agreed additional cost that could be paid, at least in part, by using funds remaining in one or more of the allowance categories; and (4) provided additional credits to Bhaduri for additional upgrades or modifications mutually agreed upon but not included in the purchase price, and itemized additional upgrades already requested by Bhaduri and their costs. The contract also contained provisions for default which included, in the case of the buyer's default, a provision for attorney fees.

Conflicts and resulting construction delays arose immediately after the parties entered into the contract. Bhaduri emailed Mortenson two days after signing the contract to stop construction because she did not like the windows being installed. A dispute arose over the substitution of expensive glass garage doors for the standard garage doors provided for in the contract. Mortenson sent Bhaduri several emails, asking her to make the necessary selections for windows, doors, flooring, siding, and paint, but Bhaduri did not make the selections. Communication problems of this nature persisted throughout the building process. As a result, construction was not completed by the June 30, 2016 deadline called for in the contract.

Less than two weeks later, on July 11, 2016, Bhaduri filed suit against LMK and Mortenson. Bhaduri asserted claims of breach of contract and violations of the Kansas Consumer Protection Act (KCPA). LMK counterclaimed, alleging Bhaduri breached the contract. The district court granted summary judgment to LMK and Mortenson on the KCPA claims. The KCPA claims were the only claims against Mortenson.

Following a jury trial on the remaining breach of contract claims between LMK and Bhaduri, the jury found in favor of LMK on Bhaduri's claim that LMK breached the contract by failing to complete the project by June 30, 2016. The jury also found in favor of LMK on its counterclaim that Bhaduri breached the contract by obstructing LMK in its efforts to complete the work required under the contract. The jury awarded no damages to LMK for Bhaduri's breach.

LMK moved for an assessment of attorney fees against Bhaduri as provided for in the contract. The district court, without holding a requested hearing, summarily denied relief. But the court granted LMK's motion to reconsider and after the hearing that followed, the court issued a memorandum decision granting LMK attorney fees of $44,488.75 and costs and expenses of $6,297.22, for a total award of $50,785.97.

Bhaduri appeals. She contends the court erred in granting partial summary judgment against her on her claims under K.S.A. 2021 Supp. 50-626(b) of the KCPA. She also contends the district court had no authority to award attorney fees under the contract between the parties because of LMK's failure to comply with a condition precedent that required it to provide notice of contract termination before asserting its counterclaim. Finally, Bhaduri contends that because the jury awarded LMK no damages for her breach of the contract, the district court's award of attorney fees and expenses was unreasonable as a matter of law.

ANALYSIS

*Bhaduri's KCPA Claims*

Bhaduri's KCPA claims were brought under the following subsections of K.S.A. 2021 Supp. 50-626: (b)(1)(A) and (F), (b)(2), and (b)(3). She does not distinguish her claims under (b)(1)(A) from those under (b)(1)(F). Those subparts of the statute provide:

3

"(b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:

(1) Representations made knowingly or with reason to know that:

(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

. . . .

(F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation." K.S.A. 2021 Supp. 50-626(b)(1)(A), (F).

Bhaduri's claims under (b)(1) are:

- Defendants *knowingly* misrepresented the allowance for the garage door.
- Defendants *knowingly* misrepresented the cost to Bhaduri for the garage door.
- Defendants *knowingly* misrepresented that LMK always added 15% to bids on change orders.

Bhaduri does not distinguish her claims under subsections (b)(2) of the statute from those under (b)(3). Those subsections define additional deceptive acts and practices as

"(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

"(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact." K.S.A. 2021 Supp. 50-626(b)(2), (3).

Bhaduri's claims under (b)(2) and (b)(3) are:

4

- Defendants *willfully* failed to inform Bhaduri about the 15% addition to all change orders until the issue arose over the selection of the garage door.
- Defendants *willfully* refused to disclose LMK's cost for upgrades selected by Bhaduri, including the deck door, and willfully refused to disclose the allowance for the deck door.

Bhaduri also made claims of unconscionable acts and practices for which the defendants also sought summary judgment. The district court granted summary judgment on all of Bhaduri's claims of unconscionability, but Bhaduri has not appealed that ruling.

In its memorandum decision granting partial summary judgment, the district court distilled Bhaduri's various KCPA claims into the following:

"1. Defendants added fifteen percent (15%) to change orders and required Bhaduri to pay that fifteen percent (15%), when the Contract did not provide that right. Plaintiff claims this is an inappropriate charge and constitutes a deceptive act and/or an unconscionable act or practice.

"2. Defendants refused to provide plaintiff detailed information on the actual costs for the upgrades selected by plaintiff or the information on the baseline of the costs for the selections made or desired to be made by plaintiff to enable her to know the costs of her selection. Defendants' failure to provide that information constitutes a deceptive act and practice and/or an unconscionable act and practice."

The district court then analyzed Bhaduri's KCPA claims under K.S.A. 2021 Supp. 50-626(b)(3), which requires evidence of willful conduct. The court provided no analysis of the claims brought under the "knowingly or with reason to know" standard of K.S.A. 2021 Supp. 50-626(b)(1). The district court concluded:

5

"Defendants are granted summary judgment on plaintiff's claims for willful omissions regarding defendants' failure to inform plaintiff that change orders would include a 15% overhead/profit margin and the failure to provide plaintiff with the actual costs for the upgrades."

As we shall see, the district court failed to address a number of Bhaduri's KCPA claims, yet the parties treated the district court's ruling as dispositive of all of them. Apparently, so did the district court. The jury trial that followed involved the parties' competing claims of breach of contract and did not include any of the unresolved KCPA claims.

In this appeal, Bhaduri claims that the district court erred in granting summary judgment on her claims under K.S.A. 2021 Supp. 50-626(b). As noted earlier, she does not contend that the district court erred in granting summary judgment on her claims of unconscionability under K.S.A. 50-627. Thus, we will direct our review only to Bhaduri's claims under K.S.A. 2021 Supp. 50-626(b).

*Standard of Review*

K.S.A. 2021 Supp. 60-256(b) permits a defendant to move for summary judgment on all or part of a plaintiff's claims. On appeal, we review summary judgment motions de novo to determine whether the district court erred in its ruling. The oft-repeated standards for considering summary judgment motions—whether in the first instance in the district court or on appeal—are well known to the parties and once again are set forth in our Supreme Court's opinion in *GFT Lenexa, LLC v. City of Lenexa*, 310 Kan. 976, 981-82, 453 P.3d 304 (2019):

"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admission of file, and supporting affidavits show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of

6

law. The district court must resolve all facts and reasonable inferences drawn from the evidence in favor of the party against whom the ruling is sought. When opposing summary judgment, a party must produce evidence to establish a dispute as to material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issue in the case. Appellate courts apply the same rules and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo. [Citation omitted.]"

Here, there is no dispute that defendants are suppliers, that Bhaduri is a consumer, and that the matters now before us arise out of a consumer transaction. Turning to Bhaduri's claims under K.S.A. 2021 Supp. 50-626(b), her burden includes the requirement that she show that she was aggrieved by the claimed deceptive conduct. See *Hernandez v. Pistotnik*, 58 Kan. App. 2d 501, 506, 472 P.3d 110 (2020). A plaintiff is aggrieved when the plaintiff is legally harmed and that harm is connected to the defendant's violation of the KCPA. See 58 Kan. App. 2d at 507.

Whether a person has engaged in deceptive acts or practices under K.S.A. 2021 Supp. 50-626 is normally a question of fact, but summary judgment is appropriate when there is no evidence of deceptive conduct. *Dana v. Heartland Management Co., Inc.*, 48 Kan. App. 2d 1048, 1063, 301 P.3d 772 (2013).

*Bhaduri's Claims Under K.S.A. 2021 Supp. 50-626(b)(1)(A) and (F)*

K.S.A. 2021 Supp. 50-626(a) prohibits a supplier from engaging in any deceptive act or practice in connection with a consumer transaction. Deceptive acts and practices under subsections (b)(1)(A) and (F) of the statute are defined as follows:

7

"(b) Deceptive acts and practices include, but are not limited to, the following, each of which is hereby declared to be a violation of this act, whether or not any consumer has in fact been misled:

(1) Representations made knowingly or with reason to know that:

(A) Property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;

. . . .

(F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation." K.S.A. 2021 Supp. 50-626(b)(1)(A), (F).

Bhaduri's claims under these provisions of the KCPA are that (1) LMK made misrepresentations to her about the allowance for a more expensive garage door and the cost to her for such a door, and (2) LMK misrepresented that it always added 15% to bids on change orders when, in fact, it did not. Bhaduri claims LMK knew or had reason to know its representations on these matters were false.

Bhaduri's claims under subsections (b)(1)(A) and (F) require her to show that the defendants made representations knowingly or with reason to know that "(A) [p]roperty or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have;" or that "(F) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation." K.S.A. 2021 Supp. 50-626(b)(1)(A), (F).

Both of these subsections of the statute deal with the characteristics and physical qualities of the property or service in question. Bhaduri did not claim the upgraded garage door was somehow defective or deficient in any way. The dispute between the parties was over the cost of the garage door. Bhaduri's claims under (b)(1) all relate to the price of the garage door, and subsections (A) and (F) on their face do not address the price of a product. The only subsection of K.S.A. 2021 Supp. 50-626(b)(1) that deals

8

with price is subsection (E), which relates to rebates and discounts promised in return for the consumer providing customer leads, matters not involved in this dispute.

Bhaduri relies on language in *Via Christi Regional Med. Center, Inc. v. Reed*, 298 Kan. 503, 314 P.3d 852 (2013), to create a viable (b)(1) claim. *Via Christi* came to the Supreme Court following the grant of summary judgment in favor of the hospital. The hospital had filed a lien against any tort settlement for the services it claimed to have provided Reed following his injuries in a railroad crossing accident. The lien was itemized in a 45-page bill. After Reed settled with the railroad, the hospital sued Reed to enforce its lien and Reed countered with claims under the KCPA. The hospital's bill supporting its lien claim contained a number of inaccuracies as determined by an auditor's report. The court stated: "Based on the inaccuracies in the bill and the auditor's report, a reasonable jury could conclude . . . that Via Christi '*intended* to give the [false billing] information even though [it] knew that it was false.'" 298 Kan. at 523. The court in *Via Christi* relied on the holding in *Ray v. Ponca/Universal Holdings, Inc.*, 22 Kan App. 2d 47, 48, 913 P.2d 209 (1995), to support the proposition that an "*overcharge* or duplicate charge—in essence, a demand for payment for a service the consumer did not receive—misrepresents the use, benefit, or quantity of that service" in violation of K.S.A. 50-626(b)(1). (Emphasis added.) *Via Christi*, 298 Kan. at 521. But *Ray* never addressed subsection (b)(1) of the statute. It dealt only with a claim under K.S.A. 50-626(b)(7), not (b)(1). Under K.S.A. 50-626(b)(7) it is a deceptive act or practice to make

> "'false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions, or the price in comparison to prices of competitors or one's own price at a past or future time.'" 22 Kan. App. 2d at 49.

Bhaduri has made no claim under (b)(7).

9

The *Via Christi* court continued:

"It is not crystal clear which subsection or subsections of K.S.A. 50-626 his claims depend upon. If it is K.S.A. 50-626(b)(1), then he need only come forward with enough evidence to demonstrate the existence of a genuine issue of material fact on whether Via Christi knew or should have known that the bill filed in support of its lien contained *overcharges* and duplicate charges in violation of the KCPA. . . .

"At this stage of the case, we know that the billing statement Via Christi provided Reed in support of its lien proved to be inaccurate in some of its particulars. Although there is no direct evidence of whether Via Christi knew or should have known of the inaccuracies when the lien was filed and pursued, there is at least circumstantial evidence that it knew or should have known of them; and it is sufficient to create a genuine issue of material fact preventing summary judgment under K.S.A. 50-626(b)(1)." (Emphasis added.) 298 Kan. at 522-23.

We are duty bound to follow Kansas Supreme Court precedent—including our Supreme Court's interpretation of the breadth of K.S.A. 2021 Supp. 50-626(b)(1)—absent an indication that the Supreme Court is departing from this interpretation of the statute. We see no such indication in the court's later rulings.

The district court failed to address Bhaduri's claims under K.S.A. 2021 Supp. 50-626(b)(1). Had it done so, it would have been forced to conclude that under *Via Christi*'s broad application of K.S.A. 50-626(b)(1), and considering Bhaduri's statement of additional uncontroverted facts in her response to the defendants' motion, there remained a genuine issue of material fact as to whether the defendants knowingly misrepresenting the allowance for the garage door, the cost to Bhaduri for the garage door, and the added 15%, which Bhaduri characterizes as resulting in an *overcharge* for the garage door.

Accordingly, we remand for further proceedings on Bhaduri's claims under K.S.A. 2021 Supp. 50-626(b)(1)—that the defendants knowingly misrepresented the allowance

for the garage doors, knowingly misrepresenting the cost to Bhaduri for the garage doors, and knowingly misrepresented that it always added 15% to the cost of a change order.

*Bhaduri's Claims Under K.S.A. 2021 Supp. 50-626(b)(2) and (b)(3)*

Based on subsections (b)(2) and (b)(3) of K.S.A. 2021 Supp. 50-626, Bhaduri alleged that defendants (1) *willfully* failed to inform Bhaduri about the 15% addition to all change orders until the issue arose over the selection of the garage door; (2) *willfully* refused to disclose LMK's cost for upgrades selected by Bhaduri, including the deck doors; and (3) *willfully* refused to disclose the allowance for the deck doors. Bhaduri lumps subsections (b)(2) and (b)(3) together in her analysis and does not distinguish one from the other or identify which is violated under a particular set of facts.

K.S.A. 2021 Supp. 50-626(b)(2) and (b)(3) define deceptive acts and practices as:

"(2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact;

"(3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact."

Under the KCPA a willful act "is one performed with a designed purpose or intent on the part of a person to do wrong or to cause injury to another." *Dana*, 48 Kan. App. 2d at 1063.

With respect to Bhaduri's first two claims, she points to nothing in the record to establish that the defendants had a duty to disclose that they added a profit factor to the cost of items Bhaduri requested that deviated from the contract's allowances. Under the contract, LMK and Bhaduri agreed that LMK would provide Bhaduri with its charge for any requested change from the allowances in the contract. Bhaduri then could accept

11

LMK's charge or negotiate a price she was willing to pay. The material fact Bhaduri's decision turned on was the cost to her of the upgrade she sought. No reasonable person would assume that materials provided for the construction of the home would be provided at the builder's cost without adding a factor to cover overhead, administration costs, and a profit to the builder.

Besides, there is no evidence—even viewed in the light favoring Bhaduri— from which a reasonable factfinder could conclude that the defendants engaged in willful concealment; that is, that in stating LMK's charge for an upgrade the defendants did so "with a designed purpose or intent . . . to do wrong or to cause injury to another." *Dana*, 48 Kan. App. 2d at 1063. An inference drawn from evidence must be reasonable in order to be considered by the factfinder. Whether an inference sought to be drawn from the evidence is reasonable is an issue of law for the court. *GFT Lenexa, LLC*, 310 Kan. at 982. When Bhaduri asked for a breakdown of costs and profit on each change order, Mortenson's response was that he did not have time to do such a breakdown on each and every item in each and every change order. The defendants had no legal duty to do so. We find no reasonable inference of intent to do wrong or to harm Bhaduri.

Bhaduri's final claim under K.S.A. 2021 Supp. 50-626(b)(2) and (b)(3) is that the defendants willfully refused to disclose the allowance for the deck door. Under (b)(3) it is a deceptive act to willfully fail to state a material fact or to willfully conceal, suppress, or omit a material fact.

To begin with, there was no allowance for the deck door. The allowances are set forth in paragraph 2 of the addendum. There is no provision there for doors. There is a provision for an additional general credit or allowance of $2,500 available for other, unspecified upgrades. But Bhaduri does not claim that the defendants would not disclose how much of that $2,500 was available. Moreover, we find no authority that imposes a requirement of a seller—absent a contractual agreement to do so—to divulge the cost of

12

their product or, as here, disclose the aggregate of the various costs of each component of labor and materials that goes into a product installed in a house under construction. We do not require that every building contractor be a cost accountant in responding to a buyer's demands. The district court did not err in granting partial summary judgment on this claim.

In summary, we remand for further proceedings on Bhaduri's three claims under (b)(1). We find no error in the district court's partial summary judgment with respect to the claims under (b)(2) and (b)(3).

*The Award of Attorney Fees and Costs*

The district court awarded fees and costs (collectively referred to as attorney fees) to LMK after it successfully defended against Bhaduri's breach of contract claim and obtained judgment on its counterclaim. The contract provision relating to attorney fees is as follows:

> "If Buyer defaults, Seller may either (i) specifically enforce this Contract; or (ii) terminate this Contract by written notice to Buyer and, at Seller's option, either retain the Earnest Money as liquidated damages as Seller's sole remedy (the parties recognizing that it would be extremely difficult to ascertain the extent of actual damages caused by Buyer's breach, and that the Earnest Money represents as fair an approximation of such actual damages as the parties can now determine), or pursue any other remedy and damages available at law or in equity. If as a result of Buyer's default, Seller employs an attorney to enforce its rights, Buyer shall, unless prohibited by law, reimburse Seller for all reasonable attorneys' fees, court costs and other legal expenses incurred by Seller in connection with the default."

Bhaduri makes two claims regarding attorney fees. First, she contends that LMK was not entitled to an award of attorney fees because it failed to satisfy a condition

13

precedent to any such award. Second, Bhaduri contends that because the jury awarded no damages on the counterclaim for Bhaduri's breach of the contract, the only reasonable fee award to LMK as a matter of law was zero dollars.

Bhaduri's counsel made clear to us in oral argument that the dispute over attorney fees is wholly independent of the dispute over claimed violations of the KCPA, and the disposition of one does not affect the disposition of the other.

*Standard of Review*

A Kansas court may not award attorney fees unless authorized by statute or by an agreement between the parties. The question of a court's authority to award attorney fees is a legal question which we review de novo. *Snider v. American Family Mut. Ins. Co.*, 297 Kan 157, 162, 298 P.3d 1120 (2013).

Bhaduri's first claim—whether LMK satisfied a condition precedent—presents a legal issue which we review de novo. The primary rule for interpreting written contracts is to determine the parties' intent. If the terms of the contract are clear, the parties' intent is determined by the contract's language without applying rules of construction. If the language is ambiguous, extrinsic or parol evidence may be considered. The law favors reasonable interpretations. *Trear v. Chamberlain*, 308 Kan. 932, 936, 425 P.3d 297 (2018).

Bhaduri's second claim—the propriety of a fee award—also presents an issue of law because Bhaduri contends that when the jury awards no damages, attorney fees may not be awarded as a matter of law. While the reasonableness of attorney fees is almost always disputed when an award of fees is challenged on appeal, here Bhaduri takes an all or nothing approach. Her challenge is to the awarding of any fees at all. She does not

14

claim the district court abused its discretion in the amount of fees awarded. Her position is that any award under the circumstances is erroneous as a matter of law.

*The Condition Precedent*

Bhaduri claims the district court lacked legal authority under the contract to award attorney fees because the contract contained a condition precedent requiring LMK to provide written notice of termination of the contract before it could pursue default and collect attorney fees. Because LMK did not provide written notice, Bhaduri argues that condition was unfulfilled and LMK cannot receive attorney fees.

A condition precedent is "'something that is agreed must happen or be performed before a right can occur to enforce the main contract.'" *M West, Inc. v. Oak Park Mall, L.L.C.*, 44 Kan. App. 2d 35, 46-47, 234 P.3d 833 (2010) (quoting *Weinzirl v. The Wells Group, Inc.*, 234 Kan. 1016, Syl. ¶ 3, 677 P.2d 1004 [1984]). There are two types of conditions precedent: those related to the formation of the contract itself and those related to the obligation to perform under an existing contract. *Oak Park Mall*, 44 Kan. App. 2d at 47. Here, the claimed condition precedent relates to performance under the terms of an existing contract in that it is claimed to "arise from the terms of a valid contract and [defines] an event that must occur before a right or obligation matures under the contract." 44 Kan. App. 2d at 47.

Turning to the language of the contract, and pairing it down to the specific language at issue, the contract provides:

> "If Buyer defaults, Seller may . . . (ii) terminate this Contract by written notice to Buyer and . . . pursue any . . . remedy and damages available at law or in equity. If as a result of Buyer's default, Seller employs an attorney to enforce its rights, Buyer shall, unless

15

prohibited by law, reimburse Seller for all reasonable attorneys' fees, court costs and other legal expenses incurred by Seller in connection with the default."

This provision came into play when LMK filed its counterclaim against Bhaduri for breach of contract. LMK's counterclaim was a compulsory counterclaim that it was required to assert in response to Bhaduri's petition. K.S.A. 2021 Supp. 60-213(a)(1)(A). Under the plain language of the contract, LMK may sue Bhaduri for breach only if it first terminates the contract by written notice. But Bhaduri abandoned that provision when she did not treat notice of termination to be a condition precedent to LMK's counterclaim. She did not contend in her answer to the counterclaim that LMK's action should be dismissed for its failure to comply with this claimed condition precedent. Nor did she separately move to dismiss the counterclaim for failure to satisfy the condition precedent. She left the door open for LMK to proceed with its counterclaim. Once the door was open, the condition precedent no longer stood as an impediment to LMK's claim under the stand-alone provision in the contract for an award of attorney fees incurred in connection with Bhaduri's default.

Consistent with this analysis, Bhaduri set forth her position on the issue of attorney fees in her pretrial questionnaire, but she made no mention of a condition precedent barring an award of fees when she advised the court:

"Any attorneys' fees incurred by LMK Construction and Mr. Mortenson in defending against the claims of Ms. Bhaduri cannot be charged against Ms. Bhaduri. The contract only provides: 'If as a result of Buyer's default, Seller employs an attorney to enforce its rights, Buyer shall, unless prohibited by law, reimburse Seller for all reasonable attorneys' fees, court costs and other legal expenses incurred by Seller in connection with the default.' Thus, only those attorneys' fees incurred by LMK Construction 'in connection with the default' may be claimed against Ms. Bhaduri. Since LMK Construction and Mr. Mortenson's attorneys' fees incurred in defending against the claims of Ms. Bhaduri are not incurred 'in connection with [Ms. Bhaduri's alleged]

16

default,' they are not recoverable. Furthermore, because the one-sided attorneys' fees provision is unconscionable, it is not enforceable."

Once Bhaduri abandoned the claimed condition precedent as a bar to LMK bringing an action for breach of contract, LMK was entitled to invoke the stand-alone contract provision for attorney fees incurred in connection with Bhaduri's default. Because LMK could pursue its breach of contract claim without having satisfied any claimed condition precedent, the contract permitted LMK to seek an award for the cost of employing an attorney to do so.

Bhaduri has cited a number of cases that discuss conditions precedent in general. None controls under the present facts. In oral argument Bhaduri stressed two Kansas cases in particular.

In *In re Marriage of Poplin*, No. 123,241, 2021 WL 3701345 (Kan. App. 2021) (unpublished opinion), the parties were engaged in a dispute over post-divorce discovery related to the former husband's financial obligations to his former wife after she began cohabitating with her fiancé. In addressing the issue of the former wife's claim for attorney fees in the district court, and after already denying any relief on appeal, the appellate court noted a condition precedent in the property settlement agreement requiring 10 days prior notice to the party in breach to allow the breach to be cured.

*Poplin* does not set forth the entirety of the contract provision relating to fees in order for us to compare it to the contract now before us. But we know that the condition precedent in *Poplin* required advance notice to allow the breaching party to cure the breach. 2021 WL 3701345, at *10. Thus, the notice provision in *Poplin* was a notice of default, not a notice to terminate.

Unlike the notice in *Poplin*, the claimed condition precedent now before us has no potential salutary effect of promoting a restoration of the contract. A notice to terminate is, as the word expresses, terminal. The contract is over and it's time to figure up the damages to the nonbreaching party. LMK's counterclaim makes this clear on its face. There is no "cure" period as in *Poplin*. 2021 WL 3701345, at *10. Under the current contract, LMK could give a termination notice on Tuesday morning and file its counterclaim on Tuesday afternoon. The termination notice had no practical effect other than to be a trap for the unwary. Had Bhaduri raised this claimed condition precedent in her reply to the counterclaim, we have no doubt that LMK simply would have sought and obtained a dismissal of its counterclaim without prejudice under K.S.A. 2021 Supp. 60-241, provided notice of termination, and immediately refiled its counterclaim. Thus, Bhaduri abandoned the effectively meaningless termination notice and proceeded to litigate the counterclaim, giving LMK the right to seek an assessment of attorney fees incurred in connection with Bhaduri's default. Given these facts, we do not find *Poplin* to be particularly enlightening.

In *Rosson v. Cutshall*, 11 Kan. App. 2d 267, 719 P.2d 23 (1986), cited by Bhaduri in oral argument, the real estate sales contract gave the nondefaulting seller the right to seek forfeiture of the property or money damages. The district court erred in awarding both because the court "expanded on the remedies available to plaintiff in granting the monetary damages in addition to forfeiture." 11 Kan. App. 2d at 271. Based on *Rosson*, Bhaduri argues that the court cannot expand or change the language of the remedies provided to LMK in the contract. Of course, our analysis is based on the exact language of the contract and does not change the remedies available to LMK upon Bhaduri's breach.

Accordingly, we conclude that the claimed condition precedent did not bar LMK from seeking attorney fees incurred in connection with Bhaduri's default.

18

*The District Court's Award of Attorney Fees*

Finally, Bhaduri argues the district court erred as a matter of law in awarding any attorney fees to LMK because the jury awarded zero damages after finding in favor of LMK on its breach of contract claim. As noted earlier, we review de novo this claim of error.

Bhaduri relies on *Farrar v. Hobby*, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992), as the foundational case supporting her argument that LMK cannot recover attorney fees after being awarded $0 for damages. *Farrar*—and the cases it cites—deal exclusively with the recovery of attorney fees under 42 U.S.C. § 1988 by a prevailing plaintiff in a civil rights case brought under 42 U.S.C. § 1983. The plaintiff claimed $17 million in damages for a claimed conspiracy and malicious prosecution aimed at closing a private school plaintiff owned and operated. After 10 years of litigation and two trips to the Court of Appeals, the case was tried to a jury. In answering special interrogatories, the jury found that some of the defendants had conspired against plaintiff, but the conspiracy was not the proximate cause of any injury to plaintiff. The jury also found that the named defendant deprived plaintiff of a civil right, but this was not the proximate cause of any damages. Plaintiff was awarded nominal damages of $1. The Supreme Court noted: "In some circumstances, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all." 506 U.S. at 115. Under these facts, the Supreme Court determined that while plaintiff, having been awarded nominal damages, was a prevailing party under 42 U.S.C. § 1988, "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, . . . the only reasonable fee is *usually* no fee at all." (Emphasis added.) 506 U.S. at 115.

None of the Kansas cases cited by Bhaduri applied *Farrar* to a breach of contract action under facts similar to those here. *Farrar* was cited in *Taylor v. Kansas Dept. of*

19

*Health & Environment*, 49 Kan. App. 2d 233, 305 P.3d 729 (2013), and *DPR, Inc. v. City of Pittsburg*, No. 84,631, 2000 WL 36746096 (Kan. App. 2000) (unpublished opinion), but those cases involved civil rights actions under § 1983. While *Hildenbrand v. Avignon Villa Homes Community Association, Inc.*, No. 120,245, 2021 WL 137339, at *10-11 (Kan. App. 2021) (unpublished opinion), cited *Farrar* in a breach of contract case, the *Hildenbrand* court simply found no abuse of discretion in the district court considering the amount recovered as a factor in setting a reasonable attorney fee. The court did not establish a rule of law that a verdict of no damages mandates a denial of attorney fees.

In our present case, the issues for trial were the competing breach of contract claims. The facts giving rise to both claims and the applicable defenses arose out of the same transactions and are "'intertwined to the point of being inseparable.'" *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11 (Tex. 1991). In its instructions, the district court informed the jury:

> "Bhaduri . . . claims that she was damaged due to Defendant, L.M.K. Construction, Inc.'s breach of contract by:
>     "1. By failing to close and failing to transfer the property to Ms. Bhaduri.
>     "2. By failing to return the deposits paid by Ms. Bhaduri."

Bhaduri claimed damages of $44,229.67, which consisted of $26,891 in deposits held by LMK, the expense of renting another property when the house was not completed on time, and her moving expenses.

The court told the jury that LMK denied any breach and claimed that Bhaduri breached the contract, which prevented LMK from performing its obligations under the contract.

In its counterclaim, LMK asserted that it was damaged due to Bhaduri's breach of the contract. The damages it claimed were for the added property taxes, loan interest payments, and property insurance expenses incurred after Bhaduri's breach; along with the added expense of completing the house, minus the increased value of the house. The total damages claimed was $76,215.03.

Bhaduri denied she breached the contract. The jury was instructed that Bhaduri claimed "LMK Construction's alleged damages should be reduced by the rent payments it received from the property [beginning in September 2017 through December 2018, totaling $34,000] . . . and by the $26,891 that Ms. Bhaduri paid in deposits."

In closing argument, Bhaduri's counsel argued that the $26,891 LMK held consisted of "deposits that [Bhaduri] paid up front that became refundable once LMK refused to close on the sale of this property." Counsel also focused on LMK's duty to mitigate its damages. But after a critical analysis of LMK's damages—adjusting for the $26,891 in deposits that LMK still held—and after taking into account the rent LMK received for the house once it was completed, Bhaduri's counsel concluded, "guess what? He's got a negative number: negative 3,903.97. What does that mean? Since that's a negative, that actually is a profit to LMK for this transaction."

This also means that LMK did sustain damages as a result of Bhaduri's breach, but by retaining the $26,891 deposit and renting out the house once construction was completed, it was able to mitigate those damages.

This stands in contrast to the facts in *Farrar*, in which the jury concluded that the plaintiff suffered no damages caused by the defendants. Here, LMK suffered damages caused by Bhaduri's breach, but those damages ultimately were mitigated through LMK's efforts.

21

Furthermore, while a claimant's "prevailing party" status is crucial for a recovery of attorney fees under some statutes, there is no such requirement under the parties' contract here. Bhaduri abandoned the predicate for LMK's counterclaim: notice of termination. So we turn to the remaining contract provision:

> "If as a result of Buyer's default, Seller employs an attorney to enforce its rights, Buyer shall, unless prohibited by law, reimburse Seller for all reasonable attorneys' fees, court costs and other legal expenses incurred by Seller in connection with the default."

LMK has satisfied this provision. It hired counsel to enforce its contract right to damages for breach and, over time, while the suit was pending, completed the construction project and rented out the home and retained the $26,891 advanced by Bhaduri as part of its efforts to mitigate those damages. There is no legal prohibition to the recovery of attorney fees under the circumstances present here.

Finally, there is no issue about the reasonableness of the fees awarded by the district court, other than the claim—for which we find no controlling support under the facts presented here—that any award of attorney fees in this case is error as a matter of law. The district court did not err in awarding attorney fees to LMK.

Affirmed in part, reversed in part, and remanded with directions.

22